4

## Texas Pacific Coal & Oil Company v. Mrs. Beulah W. Robertson et al.

No. 6067.   Decided March 6, 1935.
(79 S. W., 2d Series, 830.)

*John Hancock* and *Clarence Wrightman,* of Fort Worth,, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the plaintiff in error oil company was guilty of gross negligence in cranking the engine while plaintiff was on the flow tank, because the undisputed evidence showed that Sporer, who cranked the engine, did not know of his presence on the

flow tank, and that plaintiff had gone there merely to satisfy his own curiosity. Magnolia Pet. Co. v. Ford, 14 S. W. (2d) 97; Union Stockyard v. Peeler (Com. App.), 37 S. W. (2d) 126; St. Louis, S. W. Ry. Co. v. Spivey, 97 Texas, 143, 76 S. W., 748.

It was error to hold that the defense of contributory negligence was not available to defendant oil company in action to recover exemplary damages. Ft. Worth Elev. Co. v. Russell, 123 Texas, 128, 70 S. W. (2d) 397; (Civ. App., 28 S. W. (2d) 320).

*L. H. Flewellen,* of Ranger, and *Turner, Rodgers & Winn,* of Dallas, for defendants in error.

On proposition set out above cite:—Roberts v. J. B. Colts Co., 31 S. W. (2d) 196; Livezey v. Putnam Supply Co., 30 S. W. (2d) 902; Associated Indmnity Co. v. Wilson, 21 S. W. (2d) 314.

MR. JUDGE SMEDLEY of the Commission delivered the opinion for the court.

Defendants in error, the widow and heirs of George W. Robertson, Jr., deceased, sued plaintiff in error for exemplary damages, alleging that the death of Robertson, who was employed as a driller on an oil and gas lease in Palo Pinto County owned by plaintiff in error, was caused by gross negligence of plaintiff in error and its employees. Workmen's compensation insurance was carried and an award of compensation was made and paid, and accepted by defendants in error.

A well which had already made a small quantity of oil was shot, which increased the flow of oil and gas. The deceased Robertson was employed as a driller, his duties being at and about the well. Sporer was employer as tool dresser, one of his duties being to attend to pumping the oil from the well into a flow tank which was situated from seventy-five to one hundred feet from the well. Near the flow tank was a gasoline engine to be used in pumping the oil. The testimony was that this engine was from four to eleven feet from the flow tank. A short time after the shooting of the well was completed Bonney, who was the farm boss and was also acting as field superintendent, directed Sporer to pump the oil from the well into the flow tank, and left to go to another well. An hour or more thereafter Sporer cranked the engine in order to begin pumping the oil, when immediately gas, which apparently arose from the flow tank, caught fire. Rob-

ertson, without the knowledge of Sporer, had left the well and was on the flow tank. His clothing caught fire and he died soon thereafter from the burns. At the time of the fire no one except Robertson and Sporer was at or near the well or the flow tank.

But three issues were submitted to the jury, the first being as follows:

"Do you find from a preponderance of the evidence that the defendant was guilty of gross negligence, as that term is herein above defined, in attempting to crank up the gasoline engine at the time and place and under the circumstances?"

The second issue was that of proximate cause, and the third the amount of exemplary damages. The jury answered the first two issues in the affirmative and fixed the amount of damages at $5,000. Judgment for that sum was affirmed by the Court of Civil Appeals. 39 S. W. (2d) 912.

In granting the application for writ of error, the court expressed doubt whether the issue of gross negligence was in the case. Decision of the case has been delayed to await the decision of Fort Worth Elevators Co. v. Russell, 123 Texas, 128, 70 S. W. (2d) 397.

1 After a careful examination of the entire statement of facts, we have reached the conclusion that there is no evidence from which it can reasonably be inferred that plaintiff in error was guilty of gross negligence in attempting to crank the gasoline engine at the time and place and under the circumstances.

The definition of gross negligence which has probably been quoted oftener than any other by the courts of this State is that given by Judge Stayton in Missouri Pacific Ry. Co. v. Shuford, 72 Texas, 165, 10 S. W., 408, and is as follows:

"Gross negligence, to be the ground for exemplary damages, should be that *entire want of care* which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it."

Similar definitions are given in Southern Cotton Press, etc. Co. v. Bradley, 52 Texas, 587 and International & Great Northern R. R. Co. v. Cocke, 64 Texas, 151.

It is to be observed that the definition quoted uses the words *"conscious indifference,"* thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of

the right to recover exemplary damages for gross negligence: "The rule is that recovery is permitted in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice." 8 R. C. L., p. 590. Mere indifference is not enough. The indifference must be *conscious*. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important.

The Court of Civil Appeals in Magnolia Petroleum Co. v. Ford, 14 S. W. (2d) 97, rested its decision, that the evidence did not raise the issue of gross negligence, very largely upon the conclusion that the employer could not reasonably have foreseen that the employee would place himself in the particular position in which he was injured. That portion of the opinion of the Court of Civil Appeals in which the finding of no evidence of gross negligence was made was approved in the refusal of the application for writ of error. Ford v. Magnolia Petroleum Co., 118 Texas, 461, 17 S. W. (2d) 36.

The person charged with the act or omission cannot be consciously indifferent to the rights or welfare of another unless he knows, or should know, that such another will probably be affected by the act or omission. Sporer's mental attitude and knowledge are important, including knowledge that he had, or should have had, as to the probability of injury to Robertson or to some other person. In International & Great Northern R. R. Co. v. Cocke, 64 Texas, 151, 157, Judge Stayton said:

"The probability of danger from a given cause must be considered in determining whether negligence exists as well as the grade."

The evidence as to the actual conditions and Sporer's knowledge at the time he cranked the engine is as follows:

The shooting of the well was completed about 3 o'clock in the afternoon and it began to flow oil at about 4:30 or 5 o'clock. Bonney, the farm boss, left directly after the shooting was completed and before the well began to flow, telling Sporer to pump the oil into the flow tank provided he got enough oil to test the lines. Bonney testified that when he left he did not believe Sporer would get much oil. He further testified that at that time there was a small amount of gas flowing from the well, that there was some gas in the air which could be detected by the odor, and a small amount of gas in the flow tank which could be ignited by a spark coming in contact with the gas if it were sufficiently settled. He expressed the opinion that the

quantity of gas that came from the well was not large for the oil that was brought in, that it was an average amount of gas for wells of that lease. Bonney had worked around oil wells for nine years. He testified that at the time he left there was no unusual condition, nothing that he noticed different from the ordinary, nothing that called his attention to any extra-ordinary danger from fire. He had never before known of a flow tank catching fire from the operation of a gasoline engine. As to the position of the engine with reference to the flow tank, he testified that it was nothing out of the ordinary, and that other companies used the same setting, sometimes placing the engine even nearer the flow tank than this one was placed.

Sporer had worked around oil wells twelve years and had many times pumped oil away from wells. He knew that gas coming from oil wells was highly inflammable, and it was his experience that fires occasionally occurred around oil wells. He testified that this engine was about the usual distance from the flow tank, that is, that the engine and flow tank were in about the same relative positions that he had been seeing them in the twelve years that he had worked around oil fields. As to the gas coming from the well he testified that he "did not think the well was making as much gas as ordinary." He knew there was gas in the air around the well, and that there was some gas coming from the flow tank. Testifying in particular with reference to conditions at the time he cranked the engine, he said:

"There was not anything with reference to the situation there when I went up to start that engine to cause me to feel it was different from the ordinary situation I found around wells when I was working around them, or that looked dangerous to me. I didn't see anything that looked any more dangerous to me than the ordinary situation. It was just the same; only I didn't believe there was quite as much gas."

He further testified:

"In regard to whether or not in the condition of this well and the storage tank and with this gas around it, whether I would not know when I fired that engine it might ignite that gas, I never gave that a thought.

"I knew if a spark came from the engine it might ignite. I did not know if a spark came from that engine it might ignite that gas; I never thought of it, I hadn't given it a thought. From my experience I would not have thought it would ignite this gas. I had never had gas ignited from the spark of an engine before."

The witness Hannold testified that in his twelve years of

experience in the production of oil he had found the usual custom to be to place gasoline engines from eighty to one hundred feet from flow tanks, and that he had not seen a gasoline engine placed within eleven feet of a flow tank to a well that was being brought in with oil and gas.

The fire covered but a small area and soon burned out. It did not reach the derrick or anything near the derrick. It seems to have been confined to the flow tank and a small area around the tank. Sporer's clothes did not catch fire. His hands were burned when he tried to put out the fire which was burning Robertson's clothes.

After he was burned Robertson stated that he was at the flow tank when the fire started, having gone there to satisfy his curiosity about the well. The undisputed testimony is that Robertson's duties were at the well and not at the flow tank. Robertson was on the derrick floor when Sporer last saw him before the engine was cranked, and Sporer did not know that he was on or near the flow tank.

From the evidence it is apparent that there was no unusually large quantity of gas around the well or in or near the flow tank. This is shown both by the testimony given as to the amount of gas coming from the well and by the small area which was covered by the fire. There was no high probability of danger from the cranking of the engine. The conditions existing, including the position of the engine, were those which were usually present in Bonney's and Sporer's experience. Neither of them had known of a fire arising from the operation of an engine under similar conditions. When Bonney left there was some gas in the air and a small quantity arising from the flow tank, but nothing to cause him to believe that enough gas would accumulate and settle around the tank to make the operation of the engine unusually dangerous. In the light of Sporer's experience and his knowledge of the conditions present, as shown by the evidence which has been set out, his cranking of the engine cannot be considered wilful or wanton, or as done in conscious indifference to the welfare of others. He could not reasonably have foreseen injury to Robertson from the fire, because Robertson, when Sporer last saw him, was on the floor of the derrick nearly a hundred feet away, and the quantity of the gas was not sufficient to cause Sporer to believe that a fire which might start at the engine would reach the well. He could not have foreseen injury to any other person because no one else was present.

It is argued that Sporer was grossly negligent because, as

he stated, he did not give a thought to the possibility of the ignition of the gas by a spark from the engine. His failure to think of a possible result of his act might be evidence of negligence, but it is not evidence of gross negligence, because it does not constitute or indicate conscious indifference. Furthermore, the context, including this statement as above quoted, and his entire testimony show that he gave no thought to the possibility of the ignition of the gas because in his experience he had never before had gas ignited by a spark from an engine.

The testimony of Hannold, accepted as true, that in his experience he had found the usual and customary distance between engines and flow tanks to be eighty or one hundred feet does not tend to prove gross negligence on the part of Bonney in directing the operation of the engine, or on the part of Sporer in cranking it, where it was placed in this instance, in the absence of evidence that they or one of them knew of such custom or that the custom was so general and so well established that they should have known of it.

Without further discussion of the evidence, all of which has been carefully read and considered, we conclude that the trial court should have instructed a verdict for plaintiff in error because of the absence of evidence of gross negligence.

2  It is our opinion that plaintiff in error's first assignment of error in the Court of Civil Appeals was sufficient to present in that court the contention that the evidence does not raise the issue of gross negligence. The assignment, while stressing primarily the theory that Robertson became a mere licensee when he left his work at the well and went upon the flow tank, nevertheless complains of the failure of the trial court to grant plaintiff in error's motion for an instructed verdict, and the gist of the assignment is, especially when read in connection with the statement following it, that plaintiff in error was not guilty of gross negligence toward Robertson under all the circumstances, and particularly because it did not know, and was not charged with knowledge, of his presence on the flow tank.

3  Because of the conclusion reached it is unnecessary to determine whether plaintiff in error is precluded by its failure to plead contributory negligence and assumed risk, or by its failure to request the submission of such issues to the jury, from obtaining the advantage of the recent decision that the Workmen's Compensation Act did not abolish the common law defenses of contributory negligence and assumed risk in actions to recover exemplary damages for death due to gross

neglect. Fort Worth Elevators Co. v. Russell, 123 Texas, 128, 70 S. W. (2d) 397.

It is also unnecessary to determine (assuming, but not holding, that the question is so presented that it might be decided here) whether the act complained of, if grossly negligent, was the very act of the corporation, for which it would be liable in exemplary damages, or the act of a mere servant or employee as such, for which it would not be so liable, under the rules announced in the case last above cited.

The judgments of the trial court and the Court of Civil Appeals are reversed and judgment is here rendered for plaintiff in error.

Opinion adopted by the Supreme Court March 6, 1935.