## LOYD v. PIERCE et al.
### No. 13275.

Court of Civil Appeals of Texas. Fort Worth.

Dec. 13, 1935.

Rehearing Denied Jan. 17, 1936.

Lightfoot & Robertson and Nelson Scurlock all of Fort Worth, for appellant.

Houtchens & Houtchens and J. Harold Craik, all of Fort Worth, for appellees.

MARTIN, Justice.

We adopt the statement of the case as contained in appellant's brief, as follows:

The suit arises out of the death of A. A. Pierce on April 10, 1933, while he was working as an employee of J. Ernest Loyd in the construction of a bridge and overpass about twelve miles west of Fort Worth on state highway No. 10. Ona Pierce, a feme sole, and her two children, Alvin Archie Pierce, and Leroy Pierce, minors, who appeared by their next friend, were plaintiffs. Although it was not alleged in the petition upon which the plaintiffs went to trial, it appeared from the undisputed evidence that Ona Pierce was the surviving wife of A. A. Pierce, and the minors, Alvin Archie Pierce and Leroy Pierce, were the children of A. A. Pierce and Ona Pierce. The plaintiffs had previously collected compensation insurance in the way of death benefits from the insurance company that insured the employees of J. Ernest Loyd

under the Workmen's Compensation Act (Vernon's Ann.Civ.St. art. 8306 et seq.), so the question of actual damagas was not involved, except the plaintiffs prayed that they had sustained actual damages and the amount thereof in order to make out their cause of action for exemplary damages.

J. Ernest Loyd had made a contract with the highway department of the state of Texas to construct a combination bridge and overpass near Benbrook, which is approximately twelve miles west of Fort Worth. The work was part of a Federal Aid Project incident to the improvements of state highway No. 10 between Fort Worth and Granbury. In the beginning the highway department had hauled a large quantity of soil and made a large embankment to serve as an approach to this bridge and overpass. The undisputed evidence shows that the soil, consisting almost entirely of clay, was placed upon the earth in layers of approximately one foot in depth, and then wet and rolled with a ten-ton roller, and each layer was thus treated. The testimony of the engineer and of the men experienced in that class of work was to the effect that the soil such as was used in this instance, when thus treated and allowed to dry and set, which was done in this case, was firmer than the natural earth.

After the construction of the embankment under the supervision of the state engineer, the contract was then made for the construction of the bridge and overpass by the defendant. Of course, in the work incident to such construction it was necessary that excavation be done for the abutments and pier holes. A. A. Pierce, now deceased, was working with seven other laborers digging a large hole for the abutment on the north side of the Texas & Pacific Railroad. This hole was 14½ feet wide, 22 feet long, and approximately 14 feet deep at the time of the accident. The walls were practically perpendicular. The soil was so hard that the laborers were required to dig with picks. After being picked the loose clods were shoveled into a large pan, which was hoisted out of the hole and dumped nearby. The power for this purpose was furnished by a gasoline engine.

South of this hole excavation work was in progress for two pier holes, each of which was nine feet square. The north wall of these pier holes was 28 feet and 3 inches from the south wall of the abut-ment hole, and the walls thereof were perpendicular. The excavation in these holes had proceeded to such depth that the bottom of the holes was approximately 23 feet below the bottom of the abutment hole, where A. A. Pierce was working. Also, the excavation work in the pier holes (not the abutment hole) was being done in solid rock, necessitating the use of dynamite in blasting for the purpose of breaking and releasing the rock. This work was being done under the supervision of R. C. Montgomery, of Fort Worth, Tex., who has had many years of experience. L. G. Rhodes was a foreman, working under Montgomery.

On the morning of April 10, 1933, there were two shots of dynamite. The second shot occurred some time shortly preceding the time when the south wall of the abutment hole sloughed off and injured A. A. Pierce to such an extent that he died shortly thereafter. Although the witnesses gave various estimates as to the time intervening between the second shot of dynamite and the accident wherein A. A. Pierce was killed, the jury found such intervening period to be five minutes.

The pleadings of the plaintiffs are rather verbose, and allege many acts of negligence upon which no proof was offered. The gist of the petition filed by the plaintiff is to the effect that the dynamite was being used and exploded in the pier hole or pier holes near the place where A. A. Pierce was digging, and that the explosion of dynamite which occurred shortly before the accident in question caused the wall of the abutment hole to cave in, resulting, of course, in his death. It was alleged that W. P. Brothers, the superintendent on the job, was guilty of gross negligence in failing to notify Pierce about the explosion of such dynamite, and that he was guilty of gross negligence in failing to place braces in the hole where Pierce was digging.

In addition to a general demurrer and general denial, the defendant pleaded, particularly, that during the progress of the work incident to constructing the overpass and bridge, the conditions as to safety were transitory and changing from day to day, that the changes were brought about by the laborers themselves, that the very work of the laborers, including A. A. Pierce, created and changed the environment under which they were working, and that these conditions, including the fact that no

sheeting or braces were placed in the pier hole, were patent and obvious to A. A. Pierce and the other laborers working with him. It was alleged that A. A. Pierce, by accepting the employment and continuing the work, knowing these conditions to exist, necessarily assumed the risks and dangers incident thereto. The defendant further pleaded that if there were any cracks or other defects in the wall of the abutment hole at the time of and shortly before the accident, then such defects were latent or hidden and were not discovered by the frequent inspections which were made. The defendant also pleaded negligence of a fellow servant in failing to report to the superintendent in charge of the work, a condition which caused him to believe that the hole was dangerous and might cave in, even though the servant knew that the defendant and his superintendant were ignorant of such condition.

The trial court overruled defendant's motion for a peremptory instruction made at the close of the evidence, and submitted the case to the jury. In answer to special issues the jury found) that W. P. Brothers "or someone acting under him" failed to notify A. A. Pierce about the dynamite which was exploded in pier hole about 28 feet south of the abutment hole, where he was working. That such failure to notify Pierce was gross negligence which was a proximate cause of the accident. The jury also found that the failure on the part of W. P. Brothers to place braces in the hole in which Pierce was working was gross negligence and a proximate cause. Exemplary damages were assessed at $8,000, and the court rendered a judgment against the defendant for that amount.

The defendant filed a motion for a new trial, and subsequently filed an amended motion. By a written stipulation this motion was acted upon at a time it suited the convenience of the court. It was overruled on January 22, 1935, at which time the defendant duly excepted and gave notice of appeal to the Court of Civil Appeals. On February 6, 1935, the defendant filed his appeal bond.

Opinion on Motion to Dismiss Appeal.

We are confronted, at the outset, with the proposition on the part of the appellees that the motion for a new trial and the appeal bond were filed too late to give this court jurisdiction to hear and determine this appeal. The point is raised in five propositions, their substance being that where the judgment was entered on October 14, 1934, motion for a new trial filed on October 24, 1934, and amended motion filed on November 2, 1934, and not acted upon by the court until January 22, 1935, such action by the court was a nullity, by force of the statute, article 2092, R.S. 1925, § 28 (amended by Acts 1930, 5th Called Sess., c. 70, § 1 [Vernon's Ann.Civ. St. art. 2092, § 28]) of the so-called practice act governing the courts of Tarrant county. This section reads as follows: "A motion for new trial filed during one term of court may be heard and acted on at the next term of court. If a case or other matter is on trial or in process of hearing when the term of court expires, such trial, hearing or other matter may be proceeded with at the next term of the court. No motion for new trial or other motion or plea shall be considered as waived or over-ruled, because not acted on at the term of court at which it was filed, but may be acted on at the succeeding term or at any time which the Judge may fix or to which it may have been postponed or continued by agreement of the parties with leave of the court. All motions and amended motions for new trials must be presented within thirty (30) days after the original motion or amended motion is filed and must be determined within not exceeding forty-five (45) days after the original or amended motion is filed, unless by written agreement of the parties in the case, the decision of the motion is postponed to a later date."

The terms of this statute have been held by our Supreme Court to be mandatory. Dallas Storage & Warehouse Co. v. Taylor, 124 Tex. 315, 77 S.W.(2d) 1031; Millers Mut. Fire Insurance Co. v. Wilkirson, 124 Tex. 312, 77 S.W.(2d) 1035; Independent Life Insurance Co. of America v. Work, District Judge, 124 Tex. 281, 77 S.W.(2d) 1036.

The gist of the holding in each of these cases is that unless the motion for a new trial is presented to the trial court within thirty days from the date of filing the same, the judgment becomes final, such motion being overruled by operation of the law.

It is quite patent on the face of the record here that the point raised by appellees is well taken and that the appeal should be dismissed for want of jurisdiction unless the agreement entered into by the parties on November 24, 1934, be given

1038

the effect of waiving the statutory provisions provided and above quoted. This agreement is as follows: "Now in the above entitled and numbered cause, the parties, plaintiff and defendant, agree in writing that through their respective attorneys, the motion for new trial filed by the defendant, J. Ernest Loyd, may be considered and acted on by the court any time within the next (anytime) as may suit the convenience of the Court."

■ Since the filing of the appeal in this court, counsel for both sides have filed affidavits concerning the matter, pro and con, as to their construction of this agreement and as to what they believed to be the intention of the trial court, etc. These affidavits cannot be considered by this court under our rules and they are not here taken into account as any part of the record. Rule 23 for the Courts of Civil Appeals.

■ What is the effect of this agreement of counsel with reference to the time when the motion for a new trial shall be presented and considered by the court? It reads: Any time as may suit the convenience of the court." It is the duty of courts, both nisi prius and appellate courts, to give affect to agreements of counsel, duly filed, with the permission of the court, and it is our duty here to give this agreement such effect as we shall determine, from the language used, the situation of the parties at the time and the law in contemplation, was the intention of the parties at the time. We must assume, of course, that learned counsel knew at the time, November 24, 1934, that thirty days had already elapsed since the filing of the original motion for a new trial and that twenty-two days had gone by since the filing of his amended motion. Under the statute, as construed by our Supreme Court, the original motion was already overruled by operation of law, though the court yet had thirty days in which he could set aside that ruling and change his order, while under the amended motion there was yet eight days in which to present and consider it. Otherwise it was overruled by operation of law.

■ So the real question is: What was in contemplation by these learned counsel when they made the above agreement on November 24, 1934? They and the court must have thought that if the case took the regular course, prescribed by law, the time would be insufficient to enable counsel and court to give that mature deliberation to the merits of the motion which the rights of the

litigants and the importance of the questions involved required; so they agreed upon the extension of time, and not being able, at the time, to estimate what length of time would be needed, they used the broad expression "any time," doubtless feeling that the matter would be disposed of within a reasonable time.

Counsel for the appellees insist that the agreement did not waive time of "presentation" of the motion to the trial court and that the record shows conclusively that it was not "presented" until January 22, 1935. That is correct, but we are not inclined to so limit the meaning of the language of the agreement. We think the presentation of the motion, the argument of the counsel and their reference to authorities is a very important part of the "consideration" of the same by the court and the words "may be considered and acted on by the court any time within the next (anytime) as may suit the convenience of the court" necessarily includes all the proceedings incident to the presentation, argument, and judicial consideration of the merits of the motion. We therefore hold that said agreement amounts to an express waiver of all the matters presented in appellees' assignment, raising this point. We think it would be manifestly unjust to deny the right of the appellant to be heard in this court, with such an agreement in the record, and consequently we overrule the motion to dismiss the appeal and proceed to a consideration of the case on its merits.

Opinion on the Merits of the Appeal.

Appellant's first assignment of error is to the failure of the trial court to give an instructed verdict in his favor, and this brings the whole case up for our determination. It is a question of gross negligence vel non. That the deceased came to his death by the caving in of the walls of the hole in which he was working is certain; that the cave-in was caused by a blast of dynamite in another hole, being sunk some 28 feet south of where he was working, is an irresistible conclusion from the evidence; that "somebody blundered" may be assumed and is assumed in the consideration of the case. But a "blunder" or a mistake is not always even simple negligence, and it may be well said that it is seldom gross negligence, as that term is defined in law. As applied in cases of ordinary negligence, it is the want of or absence of ordinary care, 'a failure to do what should have been done, or the doing of that which should not have been done, resulting in the happening of an event or in-

jury which could have and should have been foreseen and avoided by the use of such care as a reasonably prudent person would have exercised under the same or similar circumstances. The law demands at the hands of all citizens in their contacts with and dealings with their fellow men, the exercise of ordinary care to prevent injury. This is true in all the relationships of our complex civilization. The obligation to do no hurtful thing toward our fellow man rests upon all alike.

■ But gross negligence is a vastly different thing from the ordinary negligence which entitles a party to compensation for an injury. In fact, damages for gross negligence are not awarded as compensation at all, but are only awarded as a punishment for a willful or grossly negligent act or omission causing injury. In this particular case, compensation was fully settled under the beneficent provisions of the Workmen's Compensation Act, so we only have to deal with the question of gross negligence and the suit is for exemplary damages and not for compensation in any sense.

A definition of gross negligence, often quoted and adopted by Judge Smedley, of the Commission of Appeals, in the case of Texas Pacific Coal & Oil Co. v. Robertson, 79 S.W.(2d) 830, 831, 98 A.L.R. 262 (opinion adopted by the Supreme Court), is as follows: "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it," quoting Judge Stayton in Missouri Pacific Railway Co. v. Shuford, 72 Tex. 165, 10 S.W. 408–411. This definition has been cited with approval and followed in so many Texas cases that we feel constrained to adopt and apply it as best we can to the case at bar. 8 R.C.L. 590, 591.

It is to be observed at the outset that the work the deceased was doing was essentially dangerous work. The exercise of even ordinary care to protect men at work in a 14-foot shaft from the danger of a cave-in would demand frequent and careful inspection of the walls, and if any loose dirt or cracks were found, a 'sheeting of the walls would probably be demanded. Another element, well known to be dangerous, was the use of dynamite in another shaft being sunk some 28 feet away from where deceased was working. Ordinary care would

also require the utmost caution in the use of this powerful explosive. The evidence shows that the means adopted by the contractor and his agents to provide for the safety of the workers were such as were commonly used in work of this character. The person in immediate charge of the work, W. P. Brothers, was a man of many years' experience in this class of work. He testified that he frequently inspected the walls of the shaft or hole and saw no indications of weakness; that he instructed the men at work there to take all precautions to prevent injury to themselves, and particularly provided that warning should be given when a charge of dynamite was to be exploded in the adjacent excavation. All of the witnesses working at the hole testified that they saw no danger and considered the walls safe, with the exception of the witness R. G. Spencer, who testified, in substance, that he was a little uneasy about it, but his impression of danger was so light that he did not communicate his fears to any one else or sound any note of warning to his fellow workers in the shaft. It was shown that the walls of the pier holes in which the blasting was being done did not cave off as a result of the blasting. It was proven, without contradiction, that the superintendent of the work, W. P. Brothers, made frequent inspections of the work and gave orders that the men working in the abutment hole be warned each time a blast of the dynamite was to be set off. He also gave general orders that the men should stop work each time the filled metal pan (into which the loose dirt at the bottom of the hole was shoveled) was elevated to the surface in order to protect themselves from clods that might fall therefrom and also gave orders that if any man became afraid of the particular work he was doing he should be changed to some other part of the work, and he employed R. C. Montgomery, a man of more than twenty years' experience in this character of work, to supervise the use of the dynamite and see that it was handled in a prudent and careful manner. Appellant contends that these facts fall far short of showing a "conscious indifference" to the welfare of the men at work in these excavations, and, under the decisions of our highest courts, in order to find the existence of gross negligence, it is necessary, not only to show the existence of the dangers, but that the master had knowledge of them or was "conscious" of them and was recklessly or wantonly indifferent to the results. People v. Campbell, 237 Mich. 424,

212 N.W. 97, 99; 45 C.J. 670. We quote from the former citation: "Ordinary negligence is based on the fact that one ought to have known the results of his acts; while gross negligence rests on the assumption that he did know but was recklessly or wantonly indifferent to the results."

Commenting on the rule, the court in the Robertson Case, supra, said: "Mere indifference is not enough. The indifference must be conscious. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important."

It is indeed important and so important in fact that its application seems to mark the dividing line between the two classes of negligence, which, we will call for brevity, simple or ordinary negligence and gross negligence. If the danger was present and the master failed to foresee it when he should have done so, then it is simple or ordinary negligence, but when the danger is present and he does foresee it and then recklessly or wantonly fails to act, then it is gross negligence, and the right of recovery for gross negligence hinges upon proof of the existence of these facts in the case. The trial court submitted two elements of alleged negligence and the jury found for the plaintiff on each of the two: First, that warning was not given when the particular shot of dynamite was exploded; and, second, that it was gross negligence to fail to brace or sheet up the hole with timbers, so as to prevent a cave-in.

C. B. Callen, the civil engineer of the state highway department, testifying from an experience of thirty-three years in such work, said, in substance, that the work was being done in the usual way and that there was no apparent danger; that he had been around the mouth of this shaft from an hour to an hour and a half before the cave-in and that there were no cracks visible at that time. He further testified: "He was building it according to custom—generally the way contractors excavate—the ground appearing solid, there wasn't any reason to doubt but what it would hold up."

No one connected with the work, with the exception of Spencer, apprehended any danger whatever, and he, as above stated, kept his apprehension to himself. Every witness who testified to having experience in such work agreed that there was no apparent danger of a cave-in. As to the warning of the men at the time of the explosion, there is some dispute as to whether the warning was given or not, but there is no dispute that the cave-in occurred anywhere from five to twenty minutes after the shot was fired. Sufficient time elapsed for the men working in the pier hole, where the dynamite was used, to come back from some 100 feet away from the mouth of the hole, get into the bucket and be lowered to the bottom of this pier hole. Witnesses gave this time at from five to twenty minutes, and, in any event, if the warning had been given and the deceased had come out of the hole, he would have had time to return and resume work before the cave-in occurred. Then there was testimony to the effect that after the pier hole in which blasting was being done had gotten down below twenty feet, the men had quit coming out of the abutment hole when blasting occurred but simply stepped over to the north wall for protection, not against a cave-in, but against falling particles of stone shot out of the pier hole by force of the explosions.

We have diligently searched this entire record and we fail to find any evidence in it tending to show that the appellant or either of the men working under him was conscious of any danger that a cave-in might occur as it did occur. On the contrary, it appears that every precaution which was reasonably necessary was taken for the protection of the deceased and his fellow workmen. We hold, therefore, that the evidence is wholly insufficient to sustain a verdict of guilt of gross negligence, and that the learned trial court should have given the peremptory instruction requested in favor of the defendant below.

Wherefore, the judgment below is here reversed and here rendered in favor of the appellant.