**BLAIR et al. v. CHAMPION PAPER & FIBRE CO.**

No. 11065.

Court of Civil Appeals of Texas. Galveston.

Jan. 16, 1941.

Rehearing Denied Feb. 13, 1941.

Devereaux Henderson, Frank Morris, and J. A. Copeland, all of Houston, for appellants.

Kemper, Hicks & Cramer, of Houston (W. L. Kemper and John G. Cramer, both of Houston, of counsel), for appellee.

CODY, Justice.

This is a suit under the Workmen's Compensation Law, Section 5 of Article 8306, Vernon's Annotated Texas Civil Statutes, to recover exemplary damages in addition to the compensation which was awarded his surviving widow under the Workmen's Compensation Law, upon the contention that appellee had been guilty of gross negligence which proximately caused the death of A. W. Blair. We might add that appellants other than the deceased's surviving widow were not dependent upon him and are, in effect, nominal parties.

Appellants rely for reversal of the judgment of the court below solely upon the contention that the jury was guilty of misconduct which vitiated the verdict upon which the judgment was based. If, as appellee contends, appellant failed as a matter of law to adduce any evidence of gross negligence on the part of appellee which proximately caused the death of deceased, then, in such case, there was no issue to go to the jury, so that the question of whether the jury was guilty of misconduct is immaterial, as in such case the court should have rendered judgment for appellee without any issues to the jury. Hansen v. Christie, Tex.Civ.App., 132 S.W.2d 910, 912. And particularly where appellee requested an instructed verdict as in this case.

We have carefully examined the evidence and have reached the conclusion that appellee is correct in its contention that there was no evidence in the record which presented any issue of whether appellee was guilty of gross negligence which proximately caused the death of the deceased. Appellants alleged that appellee was guilty of gross negligence in the following particulars which proximately caused deceased's death (the following pleadings, where they are not clear in themselves, will be made clear from the facts hereinafter stated as the undisputed evidence adduced at the trial):

"1. In negligently, recklessly and carelessly maintaining in said narrow passageway in its said electric room, an uninsulated, unguarded and exposed conductor of electricity, carrying a high, dangerous and deadly amount of electricity; and in permitting the said concealed danger and fatal instrumentality to remain uninsulated,

unguarded, open and exposed in said place, when defendant knew, and by the exercise of ordinary care could and should have known, its employees, and in particular, the said August W. Blair, deceased, could and would enter such place and be exposed to such danger, in the course of employment and work for Defendant.

"2. In negligently, recklessly and carelessly constructing and maintaining in its electric room adjoining the wood room at its plant a passageway behind the panel board too small for ordinary freedom of movement for the ordinary man, and in particular the said August W. Blair, deceased.

"3. In negligently, recklessly and carelessly failing to enlarge the said passageway and make the same large enough for ordinary persons, and in particular the said August W. Blair, deceased, to enter and pass through in safety without coming in contact with or in close proximity to the aforementioned metal conductor of electricity.

"4. In negligently, recklessly and carelessly failing to insulate and cover and erect guards around the aforementioned metal conductor of electricity.

"5. In negligently, recklessly and carelessly failing to erect gates around the deadly instrumentalities contained in its electric room; and in failing to keep said room securely locked; and in failing to keep said passageway barred and locked; and in failing to keep the dangerous portions of said electric room securely locked away from all its employees (except electricians) and in particular the said August W. Blair, deceased.

"6. In negligently, recklessly and carelessly failing to maintain signs and otherwise in failing to warn the said August W. Blair of the concealed dangers and the deadly amount of electricity that were exposed and uninsulated within Defendant's said electric room.

"7. In negligently, recklessly and carelessly failing to provide a watchman, guard or other human custodian of said electric room, so as to prevent the entry therein of employees, including deceased, who were unfamiliar with the dangerous electrical devices, and the powerful electric currents therein maintained, when the Defendant knew and by the exercise of ordinary care should and would have known, that such employees could and would enter such high-ly dangerous place in the course of work as employees of Defendant.

"8. In negligently, recklessly and carelessly carrying a high and dangerous amount of electricity, through the aforementioned metal conductor of electricity, while the said metal conductor of electricity remained in the said narrow passageway and remained uninsulated, uncovered and unguarded.

"9. In negligently and carelessly placing, and in negligently permitting to remain, a quantity of said taps on the floor of said electric room, in such close proximity to said bus bar, when Defendant knew, and should have known that the need of the employees, including deceased, would lead them to enter into said extremely dangerous zone, to recover and use said taps in the course of their duties and employment.

"10. In negligently, recklessly and carelessly failing to use a high degree of care to provide the said August W. Blair, now deceased, with a safe place in which to perform his work for the Defendant.

"11. In negligently and carelessly failing to inspect said premises and machinery, so as to see that same constituted a reasonably safe place in which to work.

"12. In negligently and carelessly failing to discharge the Defendant's absolute and non-delegable duty, under all the circumstances, to protect and guard, in some appropriate manner, against said highly dangerous agency, those employees, including deceased, who might, in the course of their employment be required to go into said concealed dangerous trap.

"That each and all of said acts and omissions constitute negligence on the part of the Defendant; and that such negligence in one, or more, or all of said respects, was the direct and proximate cause of the death of the said August W. Blair, deceased, and of all the injuries and damages of which plaintiff complains."

The undisputed evidence adduced at the trial established the following:

Appellee conducts a paper mill in Harris County wherein it makes paper out of logs. It appears that the first step in making pulp and paper out of logs is to cut them up on the same principle that a pencil sharpener reduces a pencil. This is done in the "wood-room". And blades used in reducing the logs were run or operated by elec-

896

tricity. If the load on the blades became too heavy the electric power, by a safety device, automatically cut off. If the blades were kept sharp enough there were practically no shut downs. The deceased was the foreman of the wood-room, and his duty therefore was to see that the blades were kept sharpened. Portable electrically driven emory wheels were provided with which to sharpen sets of blades. On June 14, 1937, while one of these portable emory wheels was in use in the wood-room, it was found that a nut or tap was missing therefrom. Near the wood-room was located the electric room or control room.' Appellee kept a supply or store-room at which the missing nut could have been obtained, or deceased could have called an electrician, or a mechanical engineer to fix the emory wheel. It evidently occurred to deceased that he could find a nut suited to his purpose in the electric room. Whether he expected to detach a nut from the machinery in the electric room does not appear. In any case nuts were not in storage there.

The electric room was the room where the parts of the machinery capable of inflicting electrocution were concentrated. This was doubtless for convenience as well as a measure of safety. The power which operates the blades or chippers could be controlled in the wood-room by a remote control switch which was located there. And when the load on the blades became too heavy the switch would automatically operate on the same principle that a fuse blows out when the load carried by electric light wires is too heavy. When this occurred it became necessary to start the machinery again. This was normally done by remote control, and within the wood-room. Sometimes, however, it was necessary to go to the electric room itself to operate the switch which controlled the power in the wood-room. Various switches were installed in the electric room on a panel, and on the side of the panels where the switches were located there were no exposed wires or currents. It would serve no good purpose to detail all the various measures which appellee had installed in the electric room to increase the safety of its employees. It did not keep the doors locked, but it had printed warnings of danger from high voltage both within and without. The deceased was an experienced paper mill man and had warned one of the men under him who sometimes went to the electric room to "keep his hands in his pockets" whenever he was in the room. For present purposes it must be taken as true that men from the wood-room had authority to go into the electric room for the purpose of throwing the switch which controlled the power in the wood-room. And in the part of the electric room where the switches were located all danger from contact was paneled off. The place where danger of contact had not been paneled off was in a remote part of the room and this condition existed to enable the electricians to have rapid and convenient access to the electric machinery for its maintenance. There is no evidence that the duties of any of appellee's employees other than electricians ever required them to be in that remote part of the room. And there was printed warning that there was danger from high voltage there.

Now we are not here concerned with whether appellee was guilty of ordinary negligence in not keeping the electric room locked so that none but electricians possessing keys could enter there, etc. The suit is not to recover damages for death caused by ordinary negligence. The suit is to recover damages caused by gross carelessness. Now, "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it." Texas Pacific Coal & Oil Co., 125 Tex. 4, 79 S.W.2d 830, 831, 98 A.L.R. 262. And see the recent case of Tullos v. Texas Pipe Line Company, 145 S.W.2d 267, by this Court.

As the undisputed evidence failed to raise an issue to go to the jury on the question of the death being caused by gross negligence of appellee, the question of whether the jury was guilty of misconduct is not material.

We have omitted discussing other grounds urged by appellee for affirming the judgment of the trial court as they are rendered immaterial by the view which we have here expressed.

Affirmed.