### NICHOLS v. TEXAS ELECTRIC SERVICE CO.

#### No. 2606.

Court of Civil Appeals of Texas. Eastland.

Nov. 21, 1947.

Rehearing Denied Dec. 19, 1947.

Carl M. Anderson, of Sweetwater, for appellant.

McMahon, Springer & Smart, of Abilene, for appellee.

GRISSOM, Chief Justice.

M. J. Nichols was electrocuted on January 22, 1944, while assisting Patrolman Black in replacing broken insulators for Texas Electric Service Company at its Midway substation. His surviving wife, Donna M. Nichols, brought this suit to recover exemplary damages only. At the close of plaintiff's evidence, the court discharged the jury and rendered judgment for defendant upon the theory that the evidence was insufficient to raise an issue of fact as to whether defendant was guilty of gross negligence in connection with the death of Nichols. Plaintiff has appealed.

Joe Black was a patrolman for the Texas Electric Service Company at the time of Nichols' death and Nichols was his helper.

Nichols had worked for appellee intermittently from 1938 to April 1942, at which time he became Black's helper. Black had worked for appellee continuously since 1935; he had been promoted several times and had been a patrolman for about three years when Nichols was killed. It was Black's duty to patrol the high lines and make minor repairs on such lines and on substations. He had under his supervision about 170 miles of high lines and about 125 miles of telephone lines and four or five substations. The crew consisted of the patrolman, Black, and his helper, Nichols, and the work was done under the direction and supervision of the patrolman.

On the day before Nichols was electrocuted, Black and Nichols discovered that some insulators had been broken in the Midway substation, about 25 miles west of Odessa. Black then contacted the dispatcher and arranged for a clearance so that the broken insulators would not have to be changed when the station was "hot," that is, charged with electricity, in accordance with safety regulations. The clearance was to be effective at 10:00 o'clock the following morning. The next morning Black and Nichols stopped 12 miles from the substation to open one switch and close another so that the insulators could be safely changed. When they arrived at the Midway substation, they opened two additional sets of switches and installed ground clamps for the purpose of draining electricity from the station. Black told Nichols that the section in which the fatal "bus" was located was not grounded. Plaintiff's evidence disclosed that such a statement meant, among men working with electricity, that it should be treated as "hot." All generated electricity was drained from the substation before Black and Nichols started to repair the broken insulators. That section of the substation upon which they were working had no electricity of any type left in it. The immediately adjoining section was drained of generated electricity, but proved to be charged with induced electricity. The induced electricity got into that line or "bus" because the line with which it was connected outside the station ran under a 66,000 volt line for 12 to 15 miles.

Nichols climbed up on one side of the insulators that were to be changed and Black climbed up the other side. Back of Nichols was the section that proved to be charged with induced electricity. They stood on angle irons five or six feet above the ground and leaned forward toward each other to replace insulators which were four or five feet above the angle irons on which they stood. Each had to reach forward two and a half to three feet. As Nichols leaned forward to reach the insulators his rear touched a "bus" in the adjoining section which was charged with induced electricity and he was electrocuted. The induced electricity in the "bus" could have been removed by applying ground clamps or by closing three switches "which would tie into the part already grounded." Black knew about "induced" electricity. He testified that he did not think Nichols had such knowledge.

After a most careful study of all the pertinent testimony, we are convinced that the testimony of Black, the only witness on the point in question, is not fairly susceptible to any other interpretation than that while he had knowledge that such line or "bus" could be charged with induced electricity, that he overlooked or forgot such fact, and did not think of it during the time the parties were working at the substation; that it did not then occur to him that the "bus" which Nichols leaned against might be charged with induced electricity. While Black's testimony is that he should have grounded the line or "bus" which caused Nichols' death, it is further to the effect that at the time he thought he had taken all the safety measures necessary under the circumstances. To show gross negligence of appellee the appellant necessarily depended upon the testimony of Black. When he testified Black was not an employee of appellee.

■ Article 16, Section 26 of the Constitution of Texas, Vernon's Ann.St., as applicable to this case, provides that appellant, as the surviving wife of M. J. Nichols, may recover exemplary damages if her husband's death was caused by the gross negligence of appellee. Article 8306, Section 5 of our Workmen's Compensation Statute

also provides for recovery of exemplary damages where death is caused by the gross negligence of the employer. Said Constitution and Statute also provide for recovery of exemplary damages when death has been caused through willful act or omission. No willful act or omission is charged here. The sole question for determination is whether appellant produced evidence from which a jury might conclude that her husband's death was caused by the gross negligence of appellee. The test to be applied is whether there is room for ordinary minds to differ as to the conclusion to be drawn from the evidence. Beaumont, S. L. & W. R. Co. v. Schmidt, 123 Tex. 580, 72 S.W.2d 899.

In *Southern Cotton Press & Manufacturing Co. v. Bradley*, 52 Tex. 587, 600, our Supreme Court said:

"Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise a presumption of a conscious indifference to consequences. Such indifference is morally criminal, and if it leads to actual injury may well be regarded as criminal in law. Shear & Red on Neg., sec. 600; Milwaukee & St. P. R. Co. v. Arms, 91 U.S. 495, 1 Otto, 495, 23 L.Ed. 374.

"A mere act of omission or non-feasance, to be punishable by exemplary damages, should reach the border-line of a quasi-criminal act of commission or malfeasance."

In *Texas Pacific Coal & Oil Co. v. Robertson*, 125 Tex. 4, 6, 79 S.W.2d 830, 831, 98 A.L.R. 262, Sporer, a tool dresser, was instructed by his employer to pump oil from a well into a flow tank. An engine located four to eleven feet from the flow tank was used to do the pumping. When Sporer started the engine gas from the flow tank was ignited. Robertson, without Sporer's knowledge, had left the well and was on the flow tank. Robertson's clothing was ignited and he was fatally burned. No one but Sporer and Robertson were at the well. The Supreme Court held there was no evidence of gross negligence. It said:

"The definition of gross negligence which has probably been quoted oftener than any other by the courts of this state is that

given by Judge Stayton in Missouri Pacific R. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, and is as follows: 'Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the rights or welfare of the person or persons to be affected by it.'

"Similar definitions are given in Southern Cotton Press, etc., Co. v. Bradley, 52 Tex. 587 and International & Great Northern R. Co. v. Cocke, 64 Tex. 151.

"It is to be observed that the definition quoted uses the words 'conscious indifference,' thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that recovery is permitted in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice.' 8 R.C.L., p. 590. Mere indifference is not enough. The indifference must be conscious. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important."

In *Magnolia Petroleum Co. v. Ford*, Tex. Civ.App., 14 S.W.2d 97, 101, this court said:

"We doubt if gross negligence could possibly exist under the general circumstances of the case, as disclosed by appellee's evidence, in the absence, among other things, of (a) certain knowledge on the part of appellant that the deceased would rest the entire weight of the table so as to be supported alone by the strength of this collar; (b) that the collar in such case was so weakened by the reaming out process that it would break; and (c) certain knowledge that deceased would place his body under the table. We doubt if, in the absence of a concurrence of all these three things, there could be shown an entire want of care

indicating a conscious indifference to the safety of employees. At any rate, some of these facts would have to be present and so far as we can see there is none."

In the present case, the evidence does not disclose that Black had certain knowledge either that there was induced electricity in the "bus" which Nichols leaned against or that Nichols would lean against it. He knew that all generated electricity had been drained from the station. Although Black was asked the question, "When were you first aware that that line was 'hot' and not grounded out", and answered "Well, I guess I knew it all the time," it is clear from all his testimony that he did not know that the "bus" was charged with induced electricity. All his testimony, fairly construed, merely means that although Black had technical knowledge that such a line could be charged with induced electricity by running under a highly charged electric line, that he did not think of or consider this possibility prior to Nichols' death. He simply forgot about the possibility of induced electricity being in the "bus" and he was not then conscious of the danger.

In Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 9, 79 S.W.2d 830, 832, 98 A.L.R. 262, Judge Smedley expressed the same idea as applied to the facts of that case as follows:

"It is argued that Sporer was grossly negligent because, as he stated, he did not give a thought to the possibility of the ignition of the gas by a spark from the engine. His failure to think of a possible result of his act might be evidence of negligence, but it is not evidence of gross negligence, because it does not constitute or indicate conscious indifference."

 Black's negligence was passive or negative, as ordinary negligence usually is. It was not positive or affirmative. 8 R.C.L. 590. Black unquestionably exercised some care for the protection of Nichols. As stated, he had arranged the day before Nichols was injured, for certain things to be done so that insulators could be changed while the substation was not "hot" from generated electricity. On the day of the accident, many safety measures were taken.

Twelve miles from the station Black and Nichols stopped on their way to the substation and opened one switch and closed another; upon arriving at the substation, two sets of switches were opened and ground clamps applied for the purpose of making the station safe to work in. All generated electricity was drained from the station. Black told Nichols that the area adjoining that in which they were going to work had not been grounded. This, according to plaintiff's evidence, was equivalent to advising Nichols that it should be treated as "hot." Plaintiff's evidence conclusively shows that there was not an entire want of care or a conscious indifference to the welfare of Nichols on the part of Black and that Black's negligence was not positive or affirmative but passive or negative.

We conclude that the evidence did not raise the issue of gross negligence. The judgment is affirmed.