**HELMS et al. v. UNIVERSAL ATLAS CEMENT CO.**

No. 13998.

United States Court of Appeals Fifth Circuit.

March 11, 1953.

Rehearing Denied April 14, 1953.

**422**

W. V. Dunnam, W. V. Dunnam, Jr., and F. M. Fitzpatrick, Waco, Tex., Fitzpatrick & Dunnam, of Waco, Tex., for appellants.

W. Lance Corsbie, Sam Darden and W. E. Terrell, Waco, Tex., Witt, Terrell, Jones & Riley, Waco, Tex., for appellee.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

This suit was instituted against appellee by the widow and surviving child of Charles N. Helms, deceased, pursuant to section 26, Art. 16, of the Texas Constitution, which authorizes the recovery of exemplary damages from one committing a homicide "* * * through wilful act, or omission, or gross neglect". See also Art. 8306, § 5, Vernon's Ann.Civil Stat. of Texas. At the close of plaintiffs' case, the trial judge instructed a verdict for defendant. From the judgment entered thereon plaintiffs appeal.

At the time of his fatal injuries, Helms was employed by defendant below at its cement manufacturing plant in McLennan County, Texas. Appellants were fully compensated for the death of Helms under the Texas Workmen's Compensation laws. The question here is whether or not the evidence, construed most favorably for plaintiffs, is sufficient to show *prima facie* that Helms' death was the result of a "wilful act, or omission, or gross neglect" of the defendant below so as to authorize the additional recovery of exemplary damages. The trial judge answered that question negatively.

Helms and another employee were standing by a portable cement mixer operated by an electric motor driven by a 440 volt current with their hands resting on the machine, when a short circuit occurred which electrocuted Helms and injured the other employee. A third employee, standing three or four feet from the machine, felt a "tingle" of electricity through the ground.

The machine was made entirely of metal, the frame resting upon four metal wheels, which in turn stood upon the surface of the ground. A metal tongue ordinarily used for moving the machine around, extended from the frame to the ground. The machine had been tested for "rotation" on the morning of the accident. The leakage of cement from this or other machines had somewhat crusted the surface of the ground where this machine stood. There was no permanent grounding device attached to this machine, such as a metal pin wired to the machine and driven into the ground, although other motors located on defendant's premises, similar to the motor which drove this machine, were equipped with grounding devices. It had been raining on the morning of the accident, and there was a light drizzle when the accident occurred. Since the machine stood out in the open, it and the ground around it were wet. While the machine was in operation, the electric feed wire become grounded to the frame of the machine through a small break in the in-

sulation, which caused the machine to become charged with electricity. The current short circuited through Helms standing on the wet ground with his hands resting on the metal frame of the machine, thus electrocuting him.

The mixer had been in use for twelve years or longer. No electrical trouble had been previously experienced with it, except that seven or eight months prior to this accident, another employee had reported receiving a "tingle" when he turned on the switch. The switch and all wiring were promptly replaced with adequate new material.

Following the accident, an investigation disclosed that an electric wire, which had a normal useful life of eight to ten years or longer, and which had been in use for only seven or eight months, had come in contact with the metal frame of the mixer through a very small break in the insulation. This break, not visually apparent on ordinary examination, was discovered only upon close inspection and testing with a special apparatus designed to indicate whether the mixer was properly grounded. Apparently no one had knowledge of the defect prior to the accident.

Plaintiffs below, laying great stress upon the absence of a permanent grounding device, the use of which was recommended by some of the trade literature on the subject, rely on the above facts to show a "wilful act, or omission, or gross neglect." They insist that the grounding device was knowingly omitted, and that if it had been supplied the injuries would not have occurred.

█ █ Ordinary negligence will not support a recovery here. A death through "wilful act, or omission, or gross neglect" must be shown *prima facie* before plaintiffs are entitled to go to the jury. Since the early case of Missouri Pac. Ry. Co. v. Shuford, 72 Tex. 165, 10 S.W. 408, 411, the Texas courts have held that "Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it."

█ In later cases the Texas courts, and this court, have held that gross negligence is positive and affirmative, rather than merely passive or negative, as ordinary negligence frequently is. Gross negligence connotes a conscious indifference to the safety of others. Recovery therefor is confined to cases where the negligence is wilful, or so gross as to indicate wantonness, recklessness, or malice. The plaintiff must show, not merely that the defendant could or should have foreseen and prevented the injury, but that he acted intentionally or with a degree of negligence which approximates a fixed purpose to bring about the injury of which plaintiff complains. Mere indifference to another's safety is not enough. In Texas, the mental attitude of the defendant is a factor where exemplary damages for gross negligence are sought. Bennett v. Howard, 141 Tex. 1101, 170 S.W.2d 709, 713; Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W. 2d 830, 831, 98 A.L.R. 262; Magnolia Petroleum Co. v. Ford, Tex.Civ.App., 14 S.W.2d 97, 101, affirmed 118 Tex. 461, 17 S.W.2d 36; Nichols v. Texas Elec. Serv. Co., Tex. Civ.App., 206 S.W.2d 860; Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022; McAlester v. Sinclair Ref. Co., 5 Cir., 146 F.2d 36; Phillips Oil Co. v. Linn, 5 Cir., 194 F.2d 903, 13 Texas Jur., page 241, sec. 133. Compare also Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022; Rogers v. Blake, Tex.Sup., 240 S.W.2d 1001.

█ Even if the facts here might make out a *prima facie* case of ordinary negligence, we agree with the trial judge that they fall short of showing a "wilful act, or omission, or gross neglect," as that phrase is interpreted by the Texas courts. The element of wilfulness and that degree of conscious indifference which would indicate wantonness, recklessness, or malice, are lacking. The most that can be said here is that there was an omission to supply a safety device which the exercise of reasonable prudence might require. Morton Salt Co. v. Wells, 123 Tex. 151, 70 S.W.2d 409, relied upon by appellants, is distinguishable on the facts. There, the condition of the machine, its past history, and past experience with it, demonstrate a much great-

er and more conscious indifference to the safety of the employee there involved than is shown by this evidence.

 Appellants point out that the present section 26 of Art. 16 of the Texas Constitution adopted in 1875, is a re-adoption of section 30 of Art. 12 of the Constitution of 1869, with the addition thereto of the words "or gross neglect," which did not appear in the 1869 Constitution, and that in the Constitutional Convention of 1868 a comma was inserted after the words "wilful act" and before the words "or omission," so as to set off the latter words between commas as they now appear. From this, appellants contend that the word "wilful" does not extend to nor modify the word "omission," but that a mere omission of duty, whether wilful or not, is an alternate and independent ground of liability, so that there may be a recovery for a death through a wilful act, or through an omission of duty, or through gross neglect. The Texas courts have not so construed the phrase, though they have had it under consideration since the insertion of the comma. See Houston & Texas Ry. Co. v. Baker, 57 Tex. 419, 424, decided in 1882 concerning a death occurring in 1873, and Southern Cotton Press & Mfg. Co. v. Bradley, 52 Tex. 587, 601, decided in 1880. The construction contended for by appellants would be out of harmony with the theory of exemplary damages, which are awarded as punishment for a grossly negligent act,—not for ordinary negligence. 13 Tex.Jur., page 237, § 130. Compare 33 Tex.Jur., page 179, § 108.

Other assignments of error have been examined, but no reversible error found.

Affirmed.