Charles NEWDING, Appellant,

v.

The KROGER COMPANY et al., Appellees.

No. 1627.

Court of Civil Appeals of Texas, Houston (14th Dist.).

June 29, 1977.

Rehearing Denied July 20, 1977.

Henry P. Giessel, Alice Giessel, Talbert, Giessel & Stone, Michael T. Johnson, Associate Dean, University of Houston, College of Law, Houston, for appellant.

Ervin A. Apffel, Jr., McLeod, Alexander, Powel & Apffel, Charles G. Dibrell, Dibrell, Dibrell, Greer & Brown, Galveston, for appellees.

CIRE, Justice.

Plaintiff appeals from the granting of a judgment non obstante veredicto denying him recovery of exemplary damages for gross negligence in a products liability action.

Appellant Charles Newding was injured in May 1974 when the twist-off cap on a bottle of quinine water he was carrying popped off and struck his right eye. Newding sued the distributor of the product, The Kroger Company, and the bottling company, appellee Consolidated Foods Corp. His suit was based upon two grounds of recovery: (1) strict liability based upon defendants' manufacture and distribution of a defective product, and (2) negligence in failing to exercise ordinary care with regard to the design of the twist-off cap. He further alleged the conduct of defendants in knowingly manufacturing and distributing a defective product, which was likely to cause harm to consumers, was willful and gross negligence. He prayed for compensatory damages of $235,000 and punitive damages of double that amount against both defendants.

Trial was to a jury, at which testimony was given establishing the nature and extent of plaintiff's injuries, and the defect in the capping process, which are not questioned on appeal. It was undisputed that the twist-off cap which caused the injuries had no thread. Plaintiff's expert in the failure of manufactured products, George Greene, Jr., testified concerning the process by which twist-off caps are placed on soft drink bottles and problems which could lead to a failure of such caps. The caps, in the form of a cylinder closed on one end, are placed over the bottles. Pressure rollers (sometimes called "heads") form threads in the sides of the cap by pushing the sides into the thread cavities already formed in the bottles. The head also crimps a "pilfer ring" into the base of the cap by forming tabs in the cap under the lip of the bottle, the purpose of which is to show the consum-

er if the bottle has been opened. He testified that, if the threads were not formed in the cap, the pressure inside the bottle could cause the cap to blow off. He also said that a pilfer ring with eight tabs, as that on the cap in question, could not be relied upon to keep the cap from being blown off by the pressure in the bottle. He offered the opinion that two economically feasible alternative cap designs were better and safer. One alternative was to have no pilfer ring on the cap at all; any caps which were liable to blow off would then fail at the factory. The other design would be a cap with 16 tabs on the pilfer ring, each tab being 50 percent wider than those on the cap in question, which would be adequate to maintain the cap until someone put their hand on it and opened it.

Plaintiff introduced into evidence three bottles and photographs of another bottle purchased at the same time as the bottle on which the cap failed; two of these bottles also had no thread on their caps.

William Leroy Jefferies, production supervisor at the bottling plant testified concerning the process by which bottles were capped and inspected. The machine had eight capping heads, so that the same head picked up one out of every eight bottles coming down the assembly line. As the caps were set and threaded by the head, an operator watched to see that it was set correctly. When the operator found an improperly formed cap, he stopped the machine and notified the quality control foreman, who then stopped the entire assembly line to see if any improperly set caps had gotten beyond that point. The heads sometimes got out of adjustment, as when a bottle with improperly formed threads came through the line. The plant used other checks as well. Each bottle sent down the line was inspected by an operator as a label was placed on the bottle, and a final inspection was performed before the bottle was placed into a carton. Every 20 minutes a set of bottles from every flavor produced was pulled from the line and checked for quality. In addition, supervisors checked the line at all times, walking beside it so that they could pick up bottles

for visual inspection. The witness admitted that the only explanation for allowing three or four defectively capped bottles to get out was that someone in the course of their inspection procedure had to have "let down" for "that second of time."

The case was submitted to the jury on 13 special issues. In its answers to the first six issues, the jury found that the cap was defectively designed with regard to the pilfer ring tabs and defective in not having properly formed threads; that each defect created an unreasonable risk of harm to the user; and that each was a producing cause of the accident. The jury found in issues 7 and 8 that defendants were negligent in distributing the bottle in question and that this was a proximate cause of the accident. In issues 9, 10, and 11, it found that plaintiff was entitled to actual damages of $60,004.59. In issue 12 it found defendants' conduct in distributing the bottle was a heedless and reckless disregard of the rights of others affected thereby. In issue 13 the jury found exemplary damages of $32,000.00 should be awarded against Consolidated Foods Corp. and exemplary damages of $28,000.00 should be awarded against The Kroger Co.

Defendants moved for judgment notwithstanding the verdict as to special issue 12. The court granted this motion and entered judgment awarding $60,004.59 compensatory damages to plaintiff, but denying any exemplary damages.

Appellant has limited his appeal to one defendant, Consolidated Foods Corp., and to the court's action in granting the motion for judgment n. o. v. on the jury's finding of gross negligence. The findings of liability and compensatory damages have not been attacked and are not at issue here.

Appellant presents two points of error. The first point asserts the court erred in granting the motion for judgment n. o. v. as to special issue 12 in that there was evidence to support the jury's finding on gross negligence. We disagree.

A judgment n. o. v. on an issue of damages can be upheld only if there was no

evidence to support the jury's findings on that issue. In reviewing the evidence, it must be considered in its light most favorable to the party against whom the motion was sought (here, appellant), and every reasonable intendment deducible from the evidence must be indulged in that party's favor. *Douglass v. Panama, Inc.,* 504 S.W.2d 776, 777 (Tex.Sup.1974).

As part of his negligence action appellant could obtain exemplary damages by proving Consolidated Foods Corp. had acted with gross negligence in distributing the defectively capped bottle. Both parties concede that gross negligence is

> that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it.

*Atlas Chem. Indus. v. Anderson,* 524 S.W.2d 681, 688 (Tex.Sup.1975), *quoting Missouri Pac. Ry. v. Shuford,* 72 Tex. 165, 170, 10 S.W. 408, 411 (1888). This want of care must be willful and affirmative, not simply passive or negative, or must be so gross as to show wantonness or malice. *Bennett v. Howard,* 141 Tex. 101, 108, 170 S.W.2d 709, 713 (1943); *Texas Pac. Coal & Oil Co. v. Robertson,* 125 Tex. 4, 6, 79 S.W.2d 830, 831 (1935).

We do not believe that appellant presented any evidence of gross negligence. The fact that the bottler could have used a safer twist-off cap and failed to do so or that there was a temporary failure of the inspection procedure which would have prevented the distribution of bottles with defective caps does not establish gross negligence. *Sheffield Div., Armco Steel Corp. v. Jones,* 376 S.W.2d 825, 827 (Tex.Sup.1964).

In view of our holding on this point, it is unnecessary to decide appellant's other point of error, contending there was ample evidence that Consolidated Foods Corp. approved, ratified, or participated in the gross negligence, nor is it necessary to decide the cross-point presented by appellee.

Affirmed.