## FANNY ROGERS V. E. T. BLAKE.

No. A-2931. Decided June 13, 1951.
Rehearing overruled July 25, 1951.
(240 S. W., 2d Series, 1001.)

*Andress, Lipscomb & Peticolas* and *Theodore Andress,* all of El Paso, for petitioner, Mrs. Fanny Rogers.

It was error for the Court of Civil Appeals to hold that there was no evidence of gross negligence as found by the jury and in reversing the judgment of the trial court. Glassman v. Feldman, 106 S. W. 2d 721; Pfeiffer v. Green, 102 S.W. 2d 1077; Bowman v. Puckett, 144 Texas 123, 188 S.W. 2d 571.

*R. A. D. Morton* and *H. E. Brockmoller,* both of El Paso, for respondent, E. T. Blake.

The Court of Civil Appeals erred in remanding this case, because in holding that there was no evidence there was nothing to be ascertained by another trial and the judgment should have been rendered. Munves v. Buckly, 70 S.W. 2d 605; Linn v. Nored, 133 S.W. 2d 234; Pfiffer v. Green, 102 S.W. 2d 1077.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This suit arose out of a collision between a car driven by respondent, Blake, and an automobile driven by one Sammons. Mrs. Rogers, petitioner, and her husband, and Mrs. Blake were all in the Blake car. Mr. Rogers was killed, and Mrs. Rogers seriously injured as a result of the collision. Blake failed to stop at a "stop" sign prior to entering Alabama Street from Richmond Street in the City of El Paso, Texas. Mrs. Rogers sued Blake for gross negligence in his operation of his car at and immediately prior to the collision. On a jury's answer to the special issues submitted, the trial court rendered a judgment for Mrs. Rogers against Blake. On appeal the Court of Civil Appeals at El Paso reversed and remanded the judgment for the reasons stated in the court's opinion reported in 237 S.W. 2d 457. That opinion contains a full discussion of the

pertinent facts, and we will set out only such facts as may be necessary for an understanding of our opinion.

The facts of this case disclose that two families, who were friends and members of the same church, had spent the day together driving to and from (in another friend's car) and attending a service of their church. After returning to El Paso, Mr. and Mrs. Blake took Mr. and Mrs. Rogers in their car, and were on their way to the Rogers' home when this unfortunate accident occurred wherein Mr. Rogers lost his life, and Mrs. Rogers suffered serious injuries. There is no question but that this action is governed by Art. 6701b, Vernon's Annotated Civil Statutes, and which statute is commonly called the "guest statute". It provides in part:

"Section 1. No person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, *unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."* (Emphasis added).

The purpose of this statute is to exempt operators of vehicles from liability for "negligence". Napier v. Mooneyham,, Tex. Civ. App., 94 S.W. 2d 564, writ dismissed, W.O.J., 1936, 126 Texas 654.

■ The language of the statute "or caused by his (the driver's) heedlessness or his reckless disregard of the rights of others", has been held to mean the same as the term "gross negligence". Rowan v. Allen, 134 Texas 215, 134 S.W. 2d 1022 (5) ; Bowman v. Puckett, 144 Texas 125, 188 S.W. 2d 571 (2) ; Ten Year Supplement, Tex. Jur., Vol. 2, p. 266, Secs. 311 et seq., and authorities cited therein.

There was no allegation that the injury for which redress is sought in the present suit resulted from the intentional action of E. T. Blake, the driver of the car in which Mr. and Mrs. Rogers were riding. Therefore, the question for discussion is: Does the evidence raise an issue of fact that petitioner's injuries and her damages were caused by respondent's "heedlessness or his reckless disregard of the rights of others"; or, was respondent guilty of "gross negligence"?

Petitioner relies upon three grounds of recovery; namely,

that the respondent "with gross negligence and heedless and reckless disregard of the rights of others" (1) failed to stop at a stop sign at the entrance of Richmond Street into Alabama Street, a through street or thoroughfare in the City of El Paso, Texas, (2) failed to yield the right of way at the intersection of Alabama and Richmond Streets to vehicles traveling on a through street or thoroughfare, being Alabama street, and (3) failed to keep a proper lookout for other vehicles approaching such intersection. All these allegations rely upon the failure of respondent, Blake, to stop at the stop sign as he entered Alabama Street from Richmond Street, and to his driving out into Alabama Street. Had Blake stopped the accident would not have happened. The evidence is uncontroverted to show that Blake knew of the stop sign and that he did not stop. There is evidence to show he slowed down, but none to show that he stopped. Unless his failure to stop at this stop sign constituted gross negligence, then the trial court should have sustained Blake's motions for an instructed verdict, or his motion for judgment non obstante veredicto. There is no evidence of fast driving, or that Blake was driving otherwise than carefully at all times until he ran the stop sign. Petitioner made no claim otherwise. Petitioner, or no one in the Blake car, saw the approach of the car with which they collided until immediately prior to the actual contact. Blake testified that he slowed down upon coming to the intersection (and the driver of the other car also testified to the same effect), and that he looked both up and down the street and did not see any cars approaching and drove out into the intersection. The actual collision occurred after Blake had cleared the center of the intersection. The evidence showed that there were only two other cars on Alabama Street near the point of impact—one a city bus which had passed on by shortly prior to the collision, and the other car following the car on Alabama Street with which Blake collided. The evidence showed this accident took place around 9:00 P. M., and the streets were nearly empty of vehicles at the time, and occurred in the residential portion of the city.

In discussing the meaning of "gross negligence" this Court has said:

"It is to be observed that the definition quoted uses the words 'conscious indifference', thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that re-

covery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice.' 8 R. C. L., p. 590. Mere indifference is not enough. The indifference must be *conscious. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission.* Thus the doctrine of foreseeableness becomes important." (Emphasis added) Texas Pac. Coal & Oil Co. v. Robertson, et al, 125 Texas 4, 79 S.W. 2d 830; 98 A. L. R. 262.

See Bennett v. Howard, 141 Texas 101, 170 S.W. 2d 709, where this Court after a thorough discussion of the cases involving liability for exemplary damages for gross negligence, says:

"This question was again before this court in the case of Rowan v. Allen, 134 Texas 215, 134 S. W. 2d 1022, and in an opinion written by Judge Hickman the rule announced in the Shuford and Robertson cases were reiterated. We adhere to the rule announced in the cases above mentioned and any rule to the contrary announced in other cases in conflict therewith, is hereby overruled."

See also 65 C. J. S., p. 371, Sec. 8d, et seq.; 5 Am. Jur., p. 636, Sec. 242; 38 Am. Jur., p. 690, Sec. 47.

The case of Hamilton v. Perry, Tex. Civ. App., 109 S.W. 2d 1142, no writ history, was one of the first cases construing our present "guest statute". It has been cited with approval by this Court in cases involving this statute, and according to Shepard's Southwestern Citations, it has never been questioned. That case says:

"Our Texas statute was first construed by the Tennessee Court of Appeals in Fly v. Swink, 17 Tenn. App. 627, 69 S. W. (2d) 902, in a very exhaustive opinion which adopted the intrepretation that the Supreme Court of Errors of Connecticut placed on an identical statute prior to its enactment in Texas. The construction placed upon this statute by the Tennessee court and the Connecticut courts has been adopted and approved by the court of Texas in Napier v. Mooneyham (Tex. Civ. App.) 94 S. W. (2d) 564; Aycock v. Green (Tex. Civ. App.) 94 S. W. (2d) 894; Crosby v. Strain (Tex. Civ. App.) 99 S. W. (2d) 659; Pfeiffer v. Green (Tex. Civ. App.) 102 S. W. 2d) 1077; Glassman v. Feldman (Tex. Civ. App.) 106 S. W. (2d) 721. From this unbroken line of decisions, it is now the settled law of this state that *momentary thoughtlessness, inadvertence, or error of judgment do not constitute 'heedlessness or reckless*

*disregard of the rights of others' within the meaning of this statute;* there must be something in the nature of a continued or persistent course of action; such acts as to constitute wanton misconduct or gross negligence." (Emphasis added).

That such is the law is recognized by the petitioner, Fanny Rogers, in her briefs in the Court of Civil Appeals, and in her application for writ of error and supporting briefs where she says:

"The Court of Civil Appeals was correct in holding, as was held in *Linn v. Nored, 133 S.W. 2d 234, and approved in Bowman v. Puckett,* supra, and *McCarty v. Moss, 225 S.W. 2d 883,* that 'there must be something of a continued or persistent course of action in order to constitute heedlessness and reckless disregard of the rights of others or gross negligence'.

"Petitioner was familiar with this rule of decision before this cause was filed and has no quarrel with it."

■ We think the fallacy of petitioner's reasoning is that she contends a conscious failure to stop at the stop sign; i. e., a conscious violation of the law requiring one to stop at the stop sign, constitutes gross negligence on the part of the respondent, whereas the law is that there must be a "heedlessness and reckless disregard of the *rights of others*", which a conscious failure to stop, standing alone, does not show.

■ The case of Bowman v. Puckett, 144 Texas 125, 188 S.W. 2d 571, requires that there must be a continued and persistent course of action in order for the driver to be liable. In that case the driver had been driving recklessly and unlawfully for many miles, and knew his brakes were defective. He continued this course into the thickly populated and busy part of the town of Weslaco where the accident occurred. It was held such evidence raised a fact issue for the jury's determination. In our opinion, the evidence in the case at bar raises no more than a "momentary thoughtlessness, inadvertence, or error of judgment" and does not meet the requirements of the law so as to constitute "gross negligence" and a "heedlessness or reckless disregard of the rights of others".

We think the following language of this Court in the case of Rowan v. Allen, 134 Texas 215, 134 S.W. 2d 1022, controls this cause:

"Bearing in mind the relationship existing between the parties and all other surrounding circumstances, this evidence does not

raise the issue that the defendant drove in reckless disregard of the rights of plaintiff or was consciously indifferent to her welfare. Hamilton v. Perry, supra. To permit findings of gross negligence to stand under these facts would be to permit a jury to treat the language of our guest statute as dead words.

"This case as a whole will permit of no inference other than that these parties, as friends, attended the races together for their mutual enjoyment, the plaintiff as defendant's guest, and that the defendant on his way to the races committed acts of ordinary negligence, that is, he failed to exercise ordinary care in the manner of operating his automobile. No facts or circumstances are shown which would justify the inference that defendant's conduct was grossly negligent, and, therefore, within the terms of our guest statute, supra."

■ This case has been fully developed and there is nothing to be gained by a further trial of the same, London Terrace, Inc. v. McAlister, 142 Texas 608, 180 S.W. 2d 619.

The judgments of the trial court and the Court of Civil Appeals are hereby reversed and judgment rendered that the plaintiffff take nothing.

Opinion delivered June 13, 1951.

Mr. Justice Garwood, joined by Justice Smith, dissenting.

These views were heretofore submitted as a proposed opinion of the court in this case. An additional excuse for recording them is that—with all deference—our rules governing gross negligence are in a somewhat ambiguous state, which the opinion of the court seems less to clarify than accentuate.

In Rowan v. Allen, which involved an injury to the plaintiff guest in a collision with another car, we correctly overturned the verdict of gross negligence of the defendant driver, but in so doing (as well as in holding that the plaintiff was conclusively shown to be in fact a "guest") we made important mention of the circumstance of friendship between the parties—apparently with the idea that this fact created a presumption against the existence of "conscious indifference" on the part of the defendant. Shortly thereafter, in Bennett v. Howard, we made the approving reference to Rowan v. Allen which is now quoted in the opinion of the court, though Bennett v. Howard was not an automobile case. Still later, however, Bowman v. Puckett presented another clear instance where "his guest was his friend",

but there—and evidently against an argument of the defendant based on the language of Rowan v. Allen—we sustained the finding against him, saying that matters such as friendship between driver and guest are but "circumstances, not conclusive, to be considered with the other facts and circumstances that have been discussed in determining the issue of fact, whether respondent (driver) was acting in heedless or reckless disregard of the rights of others." Now the present opinion of the court, in overturning a verdict of gross negligence, goes back to the very language of Rowan v. Allen, from which Bowman v. Puckett clearly departed and says that such "language * * * controls this case." Do we now hold that where driver and guest are good friends, there is some sort of legal presumption against the driver's "conscious indifference"? Do we mean that in the instant case, if the guests had been mere "hitchhikers", the result would be different? Perhaps we should say that friendship is alone enough to prevent the existence of "conscious indifference", to that extent expressly overrule Bowman v. Puckett, and thereby eliminate practically all cases of liability under the guest statute. Or we can follow Bowman v. Puckett and treat the matter solely as a circumstance for the fact-finder to consider in connection with the main issue of "conscious indifference". But we should not leave the matter in doubt, as the court's opinion does. Unless Rowan v. Allen is cited for the importance it apparently attaches to friendship between driver and guest, neither its language nor the decision can be said to come anywhere near "controlling" the present case. The facts in the former included no such element as the deliberate disregard of a known stop signal at a rate of speed excessive under the circumstances and in the face of an immediate traffic hazard, which the jury expressly found to exist and of which Mr. Blake could properly be charged with knowledge. The essential facts in Rowan v. Allen were excessive speed and encroaching on the wrong side of the street.

Perhaps on this aspect of the opinion of the court, its real theory is suggested by the statement that "a conscious failure to stop, standing alone, does not show" that the driver disregarded "the rights of others" (the latter phase being underscored). Perhaps this means (a) that as a matter of law (under Rowan v. Allen) Mr. Blake could not be consciously indifferent to the safety of his wife and friends who were in his car and (b) there is no proof that he actually knew of the impending hazard of the Sammons car, so he could not be consciously indifferent with respect to the occupants of that car. Any such theory seems clearly in conflict with Bowman v. Puckett, on which the opinion also purports to rely. In that case, a car occupied only

by the guest and the defendant driver and going at very high speed through the City of Weslaco, went out of control and struck a tree because of the speed and the "pull" of known faulty brakes. It was during the lunch hour and "there was little traffic on the highway through the city when the wreck occurred", the only such thing in the offing being a single car "at some distance" away. Otherwise no third person seems to have been in view. This court said, "The persons who might be affected by respondent's reckless driving were not only the occupants of his automobile but also persons who might be travelling on the street or highway or who might enter upon it. The probability of danger to all such persons 'must be considered in determining whether negligence exists, as well as the grade.' International & Great Northern R. Co. v. Cocke, 64 Texas 151, 157."

The only other interpretation to be given the language of the court's opinion to the effect that no "rights of others" were involved, because the deliberate failure to stop "stood alone", would be that we are at liberty to disregard all the evidence in the case except Mr. Blake's own testimony (which the jury evidently disbelieved) that he slowed down considerably at the intersection, looked carefully both ways, saw nothing and then proceeded across. Such a proposition could hardly have been intended.

Another point of confusion illustrated here is as to whether the case against the driver must necessarily include "something in the nature of a continued or persistent course of action" (presumably negligent action). Evidently the opinion of the court rests on the supposed absence of this factor from the evidence as well as on the presence of friendship between driver and guest, though the relative importance of the two considerations is not disclosed. Now it is difficult for me to conceive of anything more "persistent" than the act of a driver who approaches a thoroughfare guarded by stop signs, knowing it in advance to be so guarded, and then (as there was ample reason to believe) deliberately crosses without stopping at such speed that the resulting collision with a car on the thoroughfare violently throws his three guests out of his closed car, as well as throwing one passenger out of the other closed car. If that is not "persistent", then it is also not persistent deliberately to aim a pistol at another and pull the trigger. But be that as it may, we have never clearly held and should not hold it to be a necessary condition of gross negligence, that at some time or other prior to the accident the defendant must have been doing the same kind

of negligent acts that caused the collision—or perhaps similar kinds of negligent acts. Does the court here mean to infer that, if Mr. Blake had "run" two or three earlier stop signs, or perhaps only one, then the verdict would be allowed to stand? Possibly it does. But if so, is there any logical difference as regards mental attitude between a man who *deliberately* runs one stop sign and one who, deliberately or non-deliberately, runs also the preceding several signs? In other words, is not the idea or continuity or persistency but another phase of the idea of intent to do the negligent act or make the negligent omission? When a driver knowingly dashes at high speed past a stop sign into a plainly crowded thoroughfare, surely we will not say there is no basis of gross negligence just because he started his journey only a block or two away and therefore had no earlier opportunity to commit the same act. The Restatement, Torts, gives this very example as one of a clear case of recklessness or gross negeligence as distinguished from the inadvertence or mere carelessness, which is ordinary negligence. See Sec. 500, Comment b. This is doubtless what was intended by the language which the court quotes from Hamilton v. Perry, Tex. Civ. App., 109 S. W. 2d 1142, 1143. A single act of deliberate misconduct might well come within the phrase "something in the nature of a continued or persistent course of conduct" and is clearly distinguishable from inadvertence, which means the absence of intent. (The matter of intent to cause the accident or injury itself is ,of course, completely foreign to any concept of either gross or ordinary negligence and has never been claimed to be involved here). Incidentally, the evidence in the Hamilton case disclosed no more than that, immediately before and at the moment of the collision, the defendant was on the wrong side of the narrow country road in question. Clearly that is quite different from the instant situation. The same may be said with even more certainty of Linn v. Nored. In that case there was little evidence of even ordinary negligence, and the principal question was whether the injured passenger was or not a "guest". The language of Linn v. Nored, as to the requirement of a persistent course of conduct, was seemingly approved in Bowman v. Puckett—but in the course of sustaining the finding of gross negligence and accordingly reaching the result opposite to that of Linn v. Nored. Bowman v. Puckett states that "Respondent was driving at a very high rate of speed before he reached the limits of the city and he persisted in that course of action * * *", and also that "He knew that his brakes would or might grab * * * he had warned his wife of the danger." How can we say what the court would have held if only one, rather than both, of these two indications of mental attitude had been in the case?

But if the decision must be taken as establishing what it did not decide, the rule thus established is, with all respect, unsound. The reason is the simple one before indicated—that as a matter of common knowledge, the mental state described by such words as recklessness and conscious indifference is often clearly evidenced by a single act or omission or concurrent number of acts or omissions, so that any requirement of earlier conduct of the same or similar nature rests on legal fiction.

Returning to the court's reference to Bennett v. Howard, which involved a claim for exemplary damages for death of an employee in an oil well explosion and has little bearing on the present case, one notes a rather conspicuous absence of any reference to the failure of the plaintiffs to prove a continued or persistent course of negligent action. One also notes the apparent approval given to certain language from Texas Pacific Coal & Oil Co. v. Robertson, which is again approved in the instant case. With respect, that language introduces still another element of doubt and confusion by its broad assertion that "Gross negligence is positive or affirmative, rather than merely passive or negative." Surely we are not prepared to say that no case of the omission to perform a duty can be one of gross negligence. And the difficulties incident to this concept of active versus passive negligence are notorious.

Our definition of gross negligence as "that entire want of care which would raise the presumption of a conscious indifference to consequences" originated in Milwaukee & St. Paul Ry. Co. v. Arms, 91 U. S. 489, 23 L. Ed. 374, and was adopted from the latter in Southern Cotton Press, etc. Co. v. Bradley, 52 Texas 587. We still purport to adhere to it, and yet in Bowman v. Puckett we expressly rejected the argument that the effort of the defendant to apply his brakes, which was the occasion for the upset, was the exercise of some care so as to defeat the possibility of gross negligence. What remains is therefore merely conscious indifference to the safety of others—inferred or "presumed" from particular items of conduct.

From Texas Pacific Coal & Oil Co. v. Robertson and especially Bowman v. Puckett it is quite plain that we carry the "presumption" idea so far as not to require proof of an admission of the defendant that he cared not and knew he cared not whether his possible victims should survive or perish. The important thing is not whether he actually was thus indifferent. As indicated in the Restatement, Torts, Sec. 500, Comment c, there will be many cases of liability for gross negligence, in

which there was no immoral attitude on the part of the defendant, such as "conscious indifference" suggests, but merely an excessive confidence in his own judgment or skill, or a habit of not worrying about unpleasant possibilities. Bowman v. Puckett was doubtless such a case. Therefore our formula or standard of "conscious indifference" is really no more than a general description. The essential question, and the Bowman case in effect says so, is: What did the defendant do or omit to do? The only sound and practical definition of gross negligence is therefore one which speaks less in general terms of mental attitude and more in specific terms of actual conduct. Such has evidently been the conclusion of the American Law Institute in its treatment of the problem under the heading "Reckless Disregard of Safety." Restatement, Torts, Ch. 19, Secs. 500-503. The first mentioned section reads:

"The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that sustantial harm will result to him."

Judged by this rather clear and practical formula, I think the jury findings of gross negligence in the instant case have support in the evidence and that accordingly the judgment below should have been reversed and that of the trial court affirmed.

The evidence showed almost to a certainty that Mr. Blake deliberately ignored the stop sign despite foreknowledge of its presence and of the fact that Alabama was a thoroughfare. His conduct therefore fulfilled the first requirement of Sec. 500 that the act or omission of negligence be intentional.

As to the other requirements, we first note the important provision that their fulfillment does not necessarily depend upon actual knowledge of the actor but may rest equally well on proof of circumstances giving him "reason to know". There are expressions in Texas Pacific Coal & Oil Co. v. Robertson and Bowman v. Puckett indicating that a finding of gross negligence may rest in part at least upon what the defendant ought to have known. In the latter it was said "He must have known of the probability of automobiles and pedestrians travelling upon or crossing the street."

So the question is whether there was evidence that Mr. Blake had "reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him."

What facts did Mr. Blake have reason to know? There is a clear absence of any circumstance known or knowable to him as a positive justification of his regard of the stop signal. He had no positive motive to take chances, such as a pressing engagement. The evidence fails to show heavy traffic on Alabama or Richmond, but it did show some traffic, and there was the fact of the approaching Sammons car, which the jury quite reasonably found, in answer to Special Issue No. 3, to be an immediate traffic hazard, while clearly there was evidence that Mr. Blake should have known of it. From the evidence of the moderate speed of the Sammons car (which the jury found to be true) it is reasonably inferable that it did not approach suddenly from afar. Its headlights were burning, and since its occupants saw the lights of the Blake car across the park through the trees, nearly a block before the intersection, one may conclude that Mr. Blake should have seen the lights of the Sammons car, knowing as he did that he was approaching a "through street" guarded by stop signs. The jury in effect so found by convicting him of failure to yield the right of way and failure to keep a proper lookout. Further, his actual knowledge of Alabama being a "through street" gave him reason to know that traffic in the position of the Sammons car would probably rely on the Blake car to stop and therefore might well not reduce speed for the intersection. Moreover, the rather strong evidence that Mr. Blake entered the intersection at a speed considerably greater than that indicated by his own testimony justifies an inference that he ought to have known he was going at least at at a rate that would surprise and injure conflicting traffic, as indeed there is ample evidence that it did. There is no support in the record for any suggestion that the Sammons car ever reduced speed below 25 or 30 miles per hour except after the Blake car entered the intersection in front of it. As the court below properly admits, there was evidence to justify a finding that Mr. Blake entered the intersection at a speed of between 25 and 30 miles per hour. It is undisputed that the Blake car, after it was struck, continued its course some 33 feet while at the same time executing a complete circle so as to end up facing the way from which it came, and in such violent fashion as to throw all three guest passengers out of the closed car. The

statement that there was no evidence of fast driving is correct only to the extent that "fast driving" means in excess of 30 miles per hour. "Running" a stop sign even at 10 miles an hour may be "fast" under the circumstances. There was ample evidence from which the jury could have inferred that Mr. Blake did not slow down, as he said he did, on reaching the intersection.

These facts which the jury could reasonably have found Mr. Blake should have known and which he in part undoubtedly knew, afford basis for finding the risk unreasonable as a matter of ordinary judgment. Unreasonableness is here used in Sec. 500 largely in the sense of lack of any legitimate motive for the conduct pursued. One might say that when a driver has no reason to know of crowded cross traffic and intentianally "runs" a stop sign because he is late for a business appointment, he is not guilty of gross negligence. But in the instant case the jury could very properly infer that a man in Mr. Blake's position was actuated by no motive at all, except his own fancy, in taking a risk. Properly, the jury might also find that the near approach of the Sammons car, of which he should have known, made the risk quite unreasonable, since there was no substantial motive for taking the smallest risk.

Finally, the facts which the jury could reasonably believe Mr. Blake should have known might well lead a reasonable man to consider that his conduct involved high probability of an accident with serious bodily harm. Great speed is, of course, the usual evidence of such risk, and it is absent here. But, as this very case illustrates, high speed is not the only source of serious vehicle accidents. Can we say, as a matter of law, that circumstances like those before us, including the close approach of the Sammons car and the likelihood that it would keep coming, do not involve an unusually high risk of accident and serious damage? The violation of a stop signal is always risky because of the element of surprise to conflicting traffic and the difficulty of estimating the speed of cars approaching at an angle. Such violation at any substantial rate of speed in the face of another car closely approaching at ordinary speed cannot be conclusively classified as just the usual risk of accident and serious harm involved in negligent driving. Such questions of factual opinion, answerable from everyday experience and involving no unusual amount of speculation, seem peculiarly within the province of the jury.

It seems to be conceded below that evidence of a substantial

amount of cross traffic on Alabama would, if present, have sustained the finding of gross negligence. Naturally such proof would have strengthened the finding, but the lack of it is not fatal. It would be but additional evidence of the same type and effect as that of the approaching Sammons car. The hazard of a single approaching vehicle may well be as great, dangerous, and obvious as that of several cars going and coming. The jury would not have to go far afield so to find.

Obviously, too, the case against Mr. Blake would be stronger if there were direct evidence that he saw the approaching Sammons car, though in such event he would doubtless have given some reason of his own for crossing ahead of it. We need not argue whether the jury might properly have assumed that he did see it much sooner than he said he did. Under the rule of the Restatement he may be found guilty of gross negligence if he should have seen it, and there is ample evidence that he should. As before indicated, this view finds support in Bowman v. Puckett. Essentially there is little difference between the two cases except that the latter involved great speed while the other involved disregard of a traffic signal.

Associate Justice Smith concurs in this opinion.

Opinion delivered June 13, 1951.

Rehearing overruled July 25, 1951.