**Mrs. Wallace SEITT et al., Appellants,**

v.

**Felipe BERNAL et ux., Appellees.**

**No. 10537.**

Court of Civil Appeals of Texas.

Austin.

Jan. 8, 1958.

Rehearing Denied Feb. 5, 1958.

B. W. Smith, San Angelo, Strasburger, Price, Kelton, Miller & Martin, Royal H. Brin, Jr., Dallas, for appellants.

Snodgrass & Smith, Frank W. Rose, Jr., San Angelo, for appellees.

GRAY, Justice.

Appellees, Felipe Bernal and his wife, Cruz Bernal, brought this suit for damages for the death of their unmarried, minor son, Esau Bernal. The suit was against appellants Clarence Ritter, Mrs. Wallace Seitt, the surviving wife of Otto

Jost, deceased, and her husband Wallace Seitt who was joined pro forma.

In the late afternoon of April 31, 1955, Clarence Ritter, Otto Jost, Juan Lozano and Esau Bernal left Sonora in an automobile owned by Clarence Ritter for the purpose of making a social journey to Villa Cuna, Mexico. This city is located immediately across the Rio Grande River from Del Rio. Ritter and Jost occupied the front seat of the automobile and Lozano and Bernal occupied the back seat. Bernal was on the left side behind the driver and Lozano was on the right side. The trip was over highway 277 which runs from Sonora to Del Rio and is described as being "a reworked * * * nice road" for the first few miles and then as "an old hump, ridgeback road" with many curves in it, some of which were sharp curves with highway markers warning the miles per hour to be driven. After the parties had traveled some eighteen miles from Sonora the automobile was stopped and the parties got out for a few minutes. When the journey was resumed Jost was the driver with Ritter on the front seat beside him and Bernal and Lozano were on the back seat in the same positions they had formerly occupied. Jost began driving 65 miles per hour and when he had gone about half of the distance to Del Rio he ran off the highway at a curve. Lozano warned Jost to slow down and asked that he be permitted to drive. So far as the record discloses Bernal did not say anything. A second stop was made and the parties, except Ritter who said he was asleep, got out of the automobile. After the stop the parties got back in the automobile, resumed their prior positions (Jost driving) and continued their journey. At this time it was dark and it appears that Lozano asked that he be permitted to drive and cautioned or warned Jost to slow down. Jost drove at 65 or 70 miles per hour. There was no further incident until the parties were about 16 miles from Del Rio. At this point there is a sharp curve and a highway marker saying 45

miles per hour. Lozano saw the lights of a vehicle approaching from the opposite direction and warned Jost to slow down. The warning was not heeded and as Jost drove around this curve the automobile collided with a truck, coming from the opposite direction, with the result that Bernal and Jost were instantly killed.

Ritter, Jost and Lozano were each well acquainted with the highway and each had traveled over it many times. Ritter and Jost had agreed that Ritter would buy the gasoline for the trip going down and Jost would buy it for the trip back. Lozano and Bernal were invited to go on the trip but so far as the record discloses they made no contribution and none was made to them for going. The parties were friends and were making "a journey for social purposes."

In answer to special issues submitted with appropriate instructions and definitions the jury found that: Jost operated the automobile at a high and dangerous rate of speed under the existing facts and circumstances; that Jost failed to have the automobile under proper control; that Jost failed to keep a proper lookout; that Lozano warned Jost to slow down for the curve; that Jost failed to heed Lozano's warning; that Jost failed to reduce the speed of the automobile sufficiently to make the curve with safety, and that each of the acts of Jost was gross negligence and a proximate cause of the collision. The jury also found that: the collision was not the result of an unavoidable accident; Jost was not acting under an emergency; prior to the collision the automobile was stopped; prior to the stop Lozano warned Jost to slow down; and that when the automobile was stopped Bernal in the exercise of ordinary care did not know that Lozano had warned Jost to slow down. Issue 23 and its answer is:

"Do you find from a preponderance of the evidence that Esau Bernal at the five minute stop inquired about in special issue 21, if there was such a

stop, left the automobile, or could in the exercise of ordinary care have left the automobile during such stop, if any? Answer Yes or No.

"Answer: yes."

(Regardless of the purpose of issue 23, there is no dispute in the evidence that Bernal got out of the automobile at the second stop and that he re-entered it for the purpose of continuing on the journey.)

The jury assessed the damages and on the verdict a judgment for appellees was rendered.

Appellants' six points are to the effect that the trial court erred: in denying their motion for an instructed verdict and their motion for judgment; in rendering judgment for appellees because, Bernal was guilty of contributory negligence as a matter of law, recovery by appellees is barred under the doctrine of voluntary exposure to risk or volenti non fit injuria, and there is no evidence, and insufficient evidence to establish gross negligence on the part of Jost; in rendering judgment against Ritter because there is no finding of agency or joint enterprise sufficient to charge him with the conduct of Jost and there was no such agency or joint enterprise as a matter of law, and in rendering judgment against Mrs. Seitt because, as the judgment itself recites, there was no non-exempt property in her hands left by her deceased husband Jost.

Appellees in their brief say that the trip in question "was a journey for social purposes" and further say that:

"Esau Bernal was a guest on this particular trip and had never gone to Mexico before with Clarence Ritter or Otto Jost."

The above statements by appellees are fully supported by the record and we will not further discuss the status of Bernal as being that of a guest or that of a passenger. With the status of Bernal established as being that of a guest the liability of appellants is to be determined under the provisions of section 1 of Art. 6701b, Vernon's Ann.Civ.St., which provides:

"No person transported over the pubic highways of this State by the owner or operator of a motor vehicle as his guest without payment for such transportation, shall have a cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others."

■ There is nothing in the record to suggest, and appellees do not contend, that Bernal's death was the result of an intentional act. The language "heedlessness or his reckless disregard for the rights of others" means the same as the term "gross negligence." Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001, and authorities there cited. The parties here do not controvert this meaning and the cause was so submitted to the jury.

The strongest facts in support of the jury's findings of gross negligence are: The occupants of the automobile were acquainted with each other, were friends and joined together at Sonora for the purpose of making "a journey for social purposes" to the City of Villa Cuna, Mexico. The journey was to be made in Ritter's automobile. The only evidence of any character of an agreement between them as to the trip was the agreement between Ritter and Jost that one would buy the gasoline for the trip down and the other would buy it for the trip back. Ritter, Jost and Lozano were each familiar with the highway to Del Rio, they having traveled it many times. Ritter first drove but after driving some 16 or 18 miles from Sonora a stop was made and the parties got out of the automobile. The journey was then resumed with Jost driving. Lozano said that he asked to drive at this

first stop. The evidence as to Lozano's request to drive was: "Otto would say not to let me drive" and that Ritter said "let Otto drive." Upon being asked why he wanted to drive Lozano testified "Well, I just wanted to drive." Ritter testified that Jost was an experienced driver and that he had received safety awards from Coca Cola Bottling Company for his driving.

As the journey continued Jost drove at 65 or 70 miles per hour and at a curve he drove the automobile off of the highway. There is no evidence that there was heavy traffic on the highway or even that there was any traffic other than the automobile in which the parties were riding. There is no evidence that any of the parties or the automobile suffered any injury at this time and neither is there any evidence of any discussion had about this occurrence.

After proceeding more than half way from Sonora to Del Rio a second stop was made, the parties got out of the automobile for a few minutes and then continued the journey with Jost driving. It was then dark and Jost drove at 65 or 70 miles per hour. Lozano asked to drive and along the way cautioned Jost to slow down. There is no evidence that either Ritter or Jost replied to Lozano's caution to Jost to slow down. Ritter testified that he was asleep and there is no evidence as to what Jost did or said if in fact he heard Lozano —the jury found that Bernal did not know that Lozano warned Jost to slow down. Bernal was sitting beside Lozano on the back seat of the automobile and Jost was on the front seat driving. Without deciding the issue which we think is not necessary we merely note that if Bernal did not hear Lozano's warning then Jost may or may not have heard it. There is nothing in the record to affirmatively suggest that he did.

As the automobile approached a sharp curve in the highway with a highway marker saying 45 miles per hour there was a vehicle approaching the curve from the opposite direction and Lozano saw its lights

and warned Jost to slow down. Again there is no evidence as to what Jost did at the time of the warning, there is no evidence that he saw the lights of the approaching vehicle or that he heard Lozano's warning. The jury's findings supra suggest that he may not have seen the lights and that he did not heed the warning. The evidence shows that the point of impact of the collision was across the center of the highway and on the truck's own proper right-hand side.

The evidence shows that Jost was familiar with the highway and had been over it many times.

We will first consider the complained of acts of Jost singly. He drove the automobile 65 or 70 miles per hour, or as found by the jury at a high and dangerous rate of speed under the facts and circumstances then existing. In Linn v. Nored, Tex.Civ. App., 133 S.W.2d 234, 238, Er. dis., j. c., the court said:

> "The cases have construed our guest statute with regard to the liability of the host for operating his automobile at high and excessive rates of speed, and have held that the mere fact that an automobile was operated at a high and excessive rate of speed only raised the issue of ordinary negligence. Crosby v. Strain, Tex.Civ.App., 99 S.W.2d 659. They have also held that thoughtlessness, inadvertence, or error in judgment did not constitute heedless nor reckless disregard of the rights of others within the meaning of the statute; and there must be something of a continued or persistent course of action in order to constitute heedless and reckless disregard of the rights of others or gross negligence. Pfeiffer v. Green, Tex.Civ.App., 102 S.W.2d 1077; Aycock v. Green, Tex.Civ.App., 94 S.W. 2d 894; Glassman v. Feldman, Tex.Civ. App., 106 S.W.2d 721; Hamilton v. Perry, Tex.Civ.App., 109 S.W.2d 1142; Vernon's Ann.Civ.St. art. 6701b, and cases there cited."

The only evidence of recklessness, dangerous handling or loss of control of the automobile prior to the collision is speed and the one instance of it being driven off the highway. We think this cannot be said to constitute "a continued or persistent course of action" under the facts here present. What prompted Lozano's warning to Jost to slow down is not shown, neither does the evidence show that it was heard by Jost and absent such showing it cannot be sufficient to show that Jost recklessly and heedlessly disregarded such warning or even that he disregarded it. The jury found that he did not slow down for the curve.

The failure of Jost to see the approaching truck or its lights, if he did, and to see and observe the warning of the highway marker at the curve were acts of "thoughtlessness, inadvertence, or error(s) in judgment" sufficient to establish ordinary negligence. Even if these acts show indifference on the part of Jost that is not enough unless the indifference was conscious. The definition of gross negligence given by the trial court included the words "conscious indifference." In Rogers v. Blake, supra [150 Tex. 373, 240 S.W.2d 1004] Blake was driving in the City of El Paso, he failed to stop at a stop sign he knew was there and drove out into a street intersection with the result that he collided with an approaching automobile causing injuries to his guest. The court said:

"In our opinion, the evidence in the case at bar raises no more than a 'momentary thoughtlessness, inadvertence, or error of judgment' and does not meet the requirements of the law so as to constitute 'gross negligence' and a 'heedlessness or reckless disregard of the rights of others'.

"We think the following language of this Court in the case of Rowan v. Allen, 134 Tex. 215, 134 S.W.2d 1022, 1025, controls this cause:

" 'Bearing in mind the relationship existing between the parties and all other surrounding circumstances, this evidence does not raise the issue that the defendant drove in reckless disregard of the rights of plaintiff or was consciously indifferent to her welfare. Hamilton v. Perry, supra. To permit findings of gross negligence to stand under these facts would be to permit a jury to treat the language of our guest statute as dead words. * * *' "

In Bennett v. Howard, 141 Tex. 101, 170 S.W.2d 709, the rule announced in Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830, 831, 98 A.L.R. 262, was reaffirmed and that opinion was quoted in part as follows:

"It is to be observed that the definition quoted uses the words 'conscious indifference,' thus stressing the mental attitude of the person charged to have been grossly negligent. Gross negligence is positive or affirmative, rather than merely passive or negative as ordinary negligence often, and perhaps usually, is. As said in the discussion in Ruling Case Law of the right to recover exemplary damages for gross negligence: 'The rule is that recovery is permitted, in, and confined to, cases where the negligence is wilful, or where it is so gross as to indicate wantonness or malice.' 8 R.C.L. p. 590. Mere indifference is not enough. The difference must be conscious. The indifference is to the rights or welfare of the person or persons who may be affected by the act or omission. Thus the doctrine of foreseeableness becomes important."

Here there is no evidence that there was any mechanical defect in the automobile and further the evidence shows that there were many curves in the highway all, or some, of which had highway markers "telling you how fast to go around them." Prior to the collision Jost drove off the highway at one curve without injury to persons or property and so far as the evi-

dence shows he made the other curves with safety.

In Burt v. Lochausen, 151 Tex. 289, 249 S.W.2d 194, 198, the court quoted from Blashfield, Cyclopedia of Automobile Law and Practice, Vol. 4, Part 1, p. 393, Sec. 2324 as follows:

" 'Whether an automobile host's conduct is so far negligent or wanton, reckless, or willfully improper as to render him liable to a gratuitous guest, under the prevailing standard of liability, depends in every case upon the combination of circumstances present at the particular time and place. No one or two acts or omissions on the part of the host, no one or two factors from among the conditions then and there present, can be segregated and arbitrarily characterized as necessarily constituting a breach by the host of his duty. Yet typically some one particular act or omission is the central feature of every such traffic accident. It is not of itself determining, but it is still of critical significance."

When all of the acts of Jost are considered together it is shown that he drove 65 or 70 miles per hour at night along a highway with many curves and, prior to the collision, drove off the highway one time at a curve. After this incident he continued to drive at the same speed and apparently made all other curves with safety until the accident. It is our opinion that these acts show only thoughtlessness, inadvertence or errors of judgment and are insufficient to show gross negligence. Linn v. Nored supra. It is also our opinion that appellants' motion for an instructed verdict should have been granted.

It appears the case was fully developed at the trial for which reason judgment should be and is here rendered that appellees take nothing.

Reversed and rendered.