Paul H. DUNCAN

v.

Joseph Darwin DURHAM, Panhandle and Santa Fe Railway Company, and Gerald Howard Gately.

No. 7112.

Court of Civil Appeals of Texas.

Amarillo.

March 19, 1962.

Rehearing Denied April 16, 1962.

Ray & Knudtson, Amarillo, R. Dale Winget, Amarillo, of counsel, for appellant.

Culton, Morgan, Britain & White, Simpson, Adkins, Fullingim & Hankins, Lewis Jeffrey, Amarillo, McLeod, Mills, Shirley & Alexander, Galveston, for appellees.

CHAPMAN, Justice.

This is an appeal by Paul H. Duncan from an instructed verdict against him and in favor of all defendants below.

Mr. Duncan sued Gerald Howard Gately and the Panhandle and Santa Fe Railway Company for personal injuries growing out of alleged ordinary negligence. He then alleged numerous grounds of ordinary negligence against Mr. Durham and attempted to allege .gross negligence as follows: " * * * said acts of negligence constituted gross negligence * * * in that said defendant drove his automobile at a rate of speed in excess of the speed limit, ignored the traffic light and approaching traffic and failed to make any attempt to avoid colliding with defendant railroad's truck and said acts constitute gross negligence and were a proximate cause of the collision. * * *"

On April 13, 1959 Mr. Durham left his home at Lakeview, a community near Memphis, Texas, between 2:00 and 2:30 P.M. to go by Memphis and on to Amarillo to attend an electronics school that night. He had accompanying him as guests in his car Mr. Smith and appellant, the former riding in the seat beside the driver and appellant riding in the back seat. According to appellant they left Memphis sometime after 5:00 o'clock P.M. At approximately 6:50 P.M., while driving in a westerly direction on 10th St. in the City of Amarillo, Mr. Durham drove through a red light at the intersection of 10th St. and Arthur St., a North-South street in the city.

At approximately the same time a Santa Fe pickup truck driven by its employee, Gately, was proceeding down Arthur St. in a southerly direction. The pickup had stopped in the face of a red light. When the light turned to green the pickup cautiously proceeded across 10th St. in second gear, the gear the driver customarily used for starting. There was an island in the center of 10th St. approximately 3 feet wide. At a time when all the full length of the pickup but about 2½ feet of the rear had cleared 10th St. North of the island the left front fender of the Durham automobile struck the left side of the pickup at approximately a foot from the rear with such force the car was so severely damaged it was towed away and required $300.00 to repair. From this collision appellant filed suit alleging ordinary negligence against Mr. Gately and Santa Fe, and the pleadings above quoted against Mr. Durham. After appellant rested his case motions for all defendants for instructed verdict were made and by the trial court granted.

In the early jurisprudence of this state our Supreme Court in Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, laid down the following rule:

"From a careful examination of the cases, it appears (1) that it is the duty of the court to instruct a verdict, though there be slight testimony, if its probative force be so weak that it only raises a mere surmise or suspicion of the existence of the fact sought to be established, such testimony, in legal contemplation, falling short of being 'any evidence'; and (2) that it is the duty of the court to determine whether the testimony has more than that degree of probative force. If it so determines, the law presumes that the jury could not 'reasonably infer the existence of the alleged fact,' and 'that there is no room for ordinary minds to differ as to the conclusion to be drawn from it.' The broad and wise policy of the law, formed in and descending to us through the crucibles of time, does not permit the citizen to be deprived of his property, his liberty, or his life upon mere surmise or suspicion, and places upon a trained judiciary the grave responsibility of determining as a question of law whether the testimony establishes more."

That rule has been followed consistently since. Waco Drug Co. v. Hensley, Tex. Com., 34 S.W.2d 832, 835 (Commission Appeal), and cases there cited.

▮ In making this determination we must view the evidence in the light most favorable to appellant, must indulge against the instruction every inference that may *properly* be drawn from the evidence, and if the record reflects any testimony of *probative force* in favor of the loser we must hold the instruction improper. "A peremptory instruction is warranted only when the evidence is such that no other verdict can be rendered and the winning party is entitled, as a matter of law, to a judgment." White et al. v. White et al., 141 Tex. 328, 172 S.W.2d 295. (All emphases shown herein are ours.)

Being always conscious of these rules just announced, this court gives very careful consideration to each case that reaches us from an instructed verdict. In giving that careful consideration to the facts of this case and applying the above settled rules to such facts we are still compelled to hold that the trial court properly instructed a verdict for all defendants.

Without discussing all the evidence appellant urges for the several grounds of negligence alleged against Santa Fe we have no hesitancy in saying that the only possible issue that even came near to raising a fact question against it and its driver was that of failure to keep a proper lookout.

▮ The evidence viewed in the most favorable light to appellant shows the Santa Fe pickup was stopped at the red lights facing it.[1] Tenth St. where it intersects with Arthur St. is 72 feet wide from curb to curb with three traffic lanes on each side of the island in the center. Arthur St. is 34 feet wide, is a two-way street, and the Santa Fe pickup was on its proper right hand side of the street as it proceeded into

the intersection. Gately observed a city bus headed East on 10th St. stopped at the South curb facing the traffic signal as the red light faced it. He also observed a cab on the West side of Arthur St. facing Southward just South of 10th St. Just before the signal turned green facing Gately he observed a woman and child step off the South-East corner of the intersection and proceed toward the cab. Figuring they might get in on the street side of the cab he did not accelerate the pickup any faster and may have swerved "a little bit to one side"—the left. He did not turn his head "all the way" and look in any direction because of keeping a lookout for the woman and child caught in the intersection by a red light but his side vision to the East embraced the whole lane next to the island out at least 30 feet East beyond the curb and that distance of part of the middle lane. It is without contradiction that the Durham car was either in the lane next to the island or the middle lane. There was no vehicle standing or approaching within that area as Gately proceeded into the intersection. He did not see Durham's car at any time before the collision and made no application of his brakes. In fact, he was so far into the intersection at the time he heard the screeching of the brakes he did not think the noise had any connection with him and was greatly surprised at the impact.

The investigating officer testified from the physical facts, giving the Durham automobile the benefit of the doubt, that its speed was at least 30 miles per hour before applying the brakes. He also testified there were 39 feet of skid marks.

Appellant testified he looked at the speedometer about three minutes prior to the collision and it was "setting on 65." In answer to the question of whether it seemed to slow down any as they proceeded toward the intersection he answered, "None whatever."

[1]. The testimony shows the traffic at the intersection of 10th St. with Arthur St. was at the time controlled by five traffic signals, one on each corner and one suspended overhead in the center of the intersection.

In light of the physical facts we do not consider appellant's testimony of a speed of 65 miles per hour immediately prior to applying the brakes constituted evidence of probative value. But if we use the speed of 30 to 40 miles per hour or Mr. Duncan's 65 miles per hour, either of those speeds, with the distance they necessarily would have placed the Duncan car from the intersection would not, in our opinion, have forewarned Gately that the Durham car would run the three red lights facing it even if he had been looking directly at it when he proceeded into the intersection. Gately was not legally obliged under the facts of this case to anticipate unlawful or negligent conduct on the part of Durham. Our Supreme Court in Fort Worth & D. C. Ry. Co. v. Shetter, 94 Tex. 196, 59 S.W. 533, said: "We think it well settled that one person is not bound to anticipate negligent conduct on the part of another." That same court in Seinsheimer et al. v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063, said: "A pedestrian crossing a street on a proper signal light is not charged by law with the duty of looking up the street beyond the intersection to discover approaching cars and anticipating that drivers may disobey signal lights." This same principle was announced again by the same court in De-Winne v. Allen, 154 Tex. 316, 277 S.W.2d 95, in the following language:

"It is well settled that a person is not bound to anticipate negligent or unlawful conduct on the part of another. Texas & N. O. R. Co. v. Brannen, 140 Tex. 52, 166 S.W.2d 112; Seinsheimer v. Burkhart, 132 Tex. 336, 122 S.W.2d 1063; Minugh v. Royal Crown Bottling Co., Tex.Civ.App., 267 S.W.2d 861, wr. ref. In the absence of knowledge to the contrary, therefore, Mr. DeWinne was entitled to assume that no vehicles were traveling in a southerly direction on San Saba Street, and was under no duty to look to the north for the purpose of ascertaining whether or not a vehicle was approach-

ing the intersection from that direction."

■ The stock definition of proper lookout is "such a lookout as a person of ordinary care and prudence would have kept under the same or similar circumstances." We believe the evidence in this case, taken in its most favorable light to appellant, shows that Gately used at least as much, if not more care and prudence than that legally required of him as he proceeded into and through the intersection. A study of this record reveals nothing whatever Gately was legally obligated to do that he did not do nor does it show any action on his part that was different to that which a person of ordinary care and prudence would have taken under the same or similar circumstances. Appellant has cited many cases for the proposition that even though a person has the right-of-way it does not excuse him from exercising ordinary care for his own safety and the safety of others. All his cases, including Lewis v. Martin, Tex.Civ.App., 120 S.W.2d 910, by our own court, are distinguishable on the facts from the instant case, where Gately did use ordinary care for his own safety and the safety of others. Accordingly, we hold the trial court properly instructed a verdict for Santa Fe and Gately.

■ The question then presents itself as to whether Mr. Durham was guilty of gross negligence, which we shall consider without holding that the pleadings do or do not allege such grounds. By brief appellant asserts: "There was ample evidence from which the jury could have inferred that the defendant did not slow down on reaching the intersection in question." As we have heretofore intimated, we do not consider appellant's testimony in that regard as constituting probative value.

In the first place he testified that about three minutes prior to the collision the speedometer showed 65 miles per hour. If that was a true statement the car was

more than three miles from the collision at the time he noticed that speed. The question was then asked him if the car *seemed* to slow down any as they "got toward the intersection." With more than three miles in which to decrease the speed from 65 miles per hour to between 30 and 40 miles per hour such decrease could easily have been accomplished without appellant being conscious of that fact. The record also reveals that appellant made a statement shortly after the collision to the effect that he was not watching the speedometer but he would estimate "our car at the time we approached the place of accident was between 30 and 40 miles per hour." When we consider appellant's testimony in connection with the undisputed physical facts and the expert testimony of the investigating officer there is just not any probative evidence of speed beyond 40 miles per hour immediately before applying the brakes *prior to the collision.*

Mr. Durham testified, and there is not any probative evidence to the contrary, that as he reached the middle of the block approaching the 10th St. and Arthur St. intersections he saw the overhead signal was green. The car ahead of him had gone through the intersection, though the record does not show how far ahead it was. As he reached a point 30 to 40 feet from the crosswalk marking the beginning of the intersection he looked up at the light in the center and was blinded by the sun. He applied the brakes lightly, and since the car ahead had gone through he decided the light was probably still green. Thinking it would be better to proceed than to risk being struck from behind he drove ahead. At the entrance of the intersection he observed the Santa Fe pickup, applied his brakes and skidded from 30 to 40 feet. He struck the extreme rear end of the Southbound pickup and stopped a few feet away. Though the collision did considerable damage to the car it did very little damage to the pickup.

Mr. Durham did not even know appellant before the day of the collision. The other guest, Mr. Smith, asked him if Mr. Duncan might come with them. Neither of the guests were contributing any money or gasoline to the trip. There is not any testimony whatever of heedlessness or a reckless disregard of the rights of others nor that the collision was intentional on the part of Mr. Durham. He testified he left his home in Lakeview, a few miles from Memphis, about 2:00 or 2:30 o'clock. The two guests started riding with him at Memphis. There is not any probative evidence of appellant objecting at any time to the manner of driving or that Mr. Durham was in any particular hurry.

Art. 6701b, Vernon's Annotated Texas Statutes, known as the "Guest Statute" was passed by Acts 1931, 42nd Legislature. It provides in effect that no person transported over the public highways of this State by the owner or operator of a motor vehicle as his guest without payment for transportation shall have a cause of action for damages against such operator or owner for injuries, death, or loss in case of accident unless such accident shall have been intentional on the part of said owner or operator, or caused by his heedlessness or his reckless disregard of the rights of others. Our Supreme Court under the particular facts of each case has established certain rules as guides in the interpretation of this statute by which we may determine if such facts are sufficient to support a cause of action by the guest against the owner or operator of the motor vehicle. They have held that a defendant driving an automobile between 75 and 85 miles an hour when he entered the city limits of a city of 6000 population on a heavily traveled highway with knowledge of defective brakes on his machine supported findings of "heedlessness or reckless disregard of the rights of others" including guest passengers. Bowman v. Puckett, 144 Tex. 125, 188 S.W.2d 571.

Where a driver backed an unlighted automobile out of a driveway in the night and onto a heavily traveled highway, driving it diagonally across wrong lanes of traf-

fic in front of an automobile approaching at 70 to 75 miles an hour the court held the period of time during which the negligent conduct exists is not the sole criterion for determining gross negligence. Fancher v. Cadwell, 159 Tex. 8, 314 S.W.2d 820.

Gross negligence was held to exist where a defendant had driven his automobile after dark at 70 to 75 miles per hour and had passed a moving van to its left from the rear without slowing down just as it entered a left hand curve. Burt v. Lochausen et al., 151 Tex. 289, 249 S.W.2d 194.

Where a defendant drove 65 to 70 miles per hour at night along a highway with many curves, and prior to the collision drove off the highway at one time on a curve but continued afterwards to drive at the same speed until he collided with a truck on a curve, such conduct was held to be gross negligence. Bernal v. Seitt et al., 158 Tex. 521, 313 S.W.2d 520.

That same court has held that a conscious violation in not stopping at a stop sign, standing alone, does not come within the Guest Statute exception creating liability; that there must be evidence of a continued or persistent course of action evincing conscious indifference to the rights or welfare of persons affected by it to create liability of the driver of the automobile for injuries suffered by the guest in a collision; and that a driver who proceeded on to a thoroughfare at a moderate rate of speed who failed to heed a stop sign proved no more than a momentary thoughtlessness, inadvertence, or error of judgment, and did not meet the requirements of law to prove gross negligence. Rogers v. Blake, 150 Tex. 373, 240 S.W.2d 1001.

We fail to see where anything worthwhile would be accomplished by debating the last case cited, where the facts were held by the Supreme Court to be insufficient to show gross negligence, with the other cases we have cited where the facts were held by that court to come within the Guest Statute exceptions creating liability.

To us there are clearly distinguishing features to justify the results reached by the Supreme Court in each case. Suffice it to say that the facts of the instant case are more akin to the facts in Rogers v. Blake, supra than to the other cases from which we have quoted and show as a matter of law that the accident was not intentional on the part of Mr. Durham nor caused by his heedlessness nor his reckless disregard of the rights of others. The failure to stop at the red stop light was not even intentional as in the Rogers-Blake case and Mr. Durham's actions in general showed no more than a momentary thoughtlessness, inadvertence, or error of judgment. He was clearly guilty of grounds of ordinary negligence but the facts just as clearly did not meet the requirements of law to prove gross negligence. Accordingly, we hold the trial court properly instructed a verdict for all defendants, and the judgment of the trial court is in all respects affirmed.