**Nell C. CUTLER, Appellant,**

v.

**GULF STATES UTILITIES COMPANY, Appellee.**

No. 6397.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 4, 1962.

Rehearing Denied Oct. 31, 1962.

Barnes & Barnes, Beaumont, for appellant.

Orgain, Bell & Tucker, Beaumont, for appellee.

HIGHTOWER, Chief Justice.

This is a wrongful death action brought under the authority of Article 16, sec. 26, of the Constitution of the State of Texas, Vernon's Ann.St. providing for recovery of exemplary damages by the surviving widow and heirs where death is the result of the

gross negligence on the part of the party charged. The action was brought by Nell C. Cutler, as guardian of her minor daughter, and as surviving wife of James O. Cutler, against Gulf States Utilities Company as a result of the accidental death of her husband while he was employed by said company. Trial, before a jury, resulted in a judgment based upon an instructed verdict in favor of the defendant, from which judgment plaintiff has appealed.

On the day of the accident, September 2, 1954, J. W. Kirkland and G. H. Oglesbee, as vice-principals of appellee, dispatched James O. Cutler, the deceased, two subforemen, J. L. Childress and J. B. Morrison, together with four other employees, to replace a broken insulator on a high voltage power line in the near vicinity of one of appellee's power plants in Jefferson County. (The exact juxtaposition of the workmen to each other and the measurements between and/of various objects connected with the job hereinafter referred to are not entirely specific when the testimony of the several witnesses are compared as a whole; therefore, positions and measurements referred to herein are the averages of such testimony). Upon reaching the location of the broken insulator Childress, Morrison and Cutler proceeded up a ladder to a steel structure located about 25 feet from the ground. The power line in question, carrying 138,000 volts of electricity, running east and west at about the same height from the ground as the steel structure, ran parallel to said structure 5 or 6 feet to the north. This power line was attached to the east and west sides of the broken insulator in such manner that the current flowing through the line from the west could not proceed through the insulator to the line connected to the same from the east without the aid of a "jumper". This "jumper" consisted of a 47-strand copper wire 6 or 8 feet in length, one end of which was attached to the power line east of the insulator with the other end being attached to the power line on the western side thereof. Each end of this "jumper" was attached to the power line by means of a clamp known as a "hot-clamp". On the same power line approximately 10 feet to the west of the broken insulator was a "wave trap". The flow of electricity through this "wave trap" was likewise circumvented by means of a "jumper" attached on either side of it by "hot-clamps". As a part of the procedure in removing the broken insulator, the workmen first attached an insulated block and tackle to the power line in such manner as to take up slack in the same, thereby removing strain from either side of the insulator. As the work progressed, one end of the "jumper" circumventing the "wave trap" in the power line suddenly, and without warning, came loose from the "hot-clamp" in which it was attached with the result that a great electrical flash, or arc, was created. The testimony reflects that this flash was of such dimensions as to have encompassed Cutler, who was working 8 to 10 feet from the "wave trap". Simultaneously with the electrical flash, Cutler, who had only moments before, detached a safety belt he was wearing, fell to his death from the steel structure to the ground. It was stipulated in the record that his death was the result of his fall. The substance of the acts and omissions constituting gross negligence pleaded by appellant against appellee, to which we give consideration may be grouped as follows:

(1) In failing to cut off the electric current of the power line before proceeding with the repairs; (2) in failing to provide a reasonably safe place to work; (3) in making use of the "jumper" and "hot-clamp" in question when each was defective and inadequate; (4) in failing to provide adequate safety rules and regulations for the performance of such dangerous work; (5) in permitting the use of the "jumper" and "hot-clamp" in question which were loose; (6) in failing to make reasonable inspection of them prior to proceeding with the work; (7) in failing to provide a competent supervisor to inspect the work; (8) in failing to provide proper tools with which to do the work; (9) in failing to warn

Cutler of the dangers of the high voltage line.

We do not consider it necessary to state each of appellant's first 13 points of error complaining of the trial court's action. It suffices to say that, in substance, they are to the effect that the specific acts and omissions charged against appellee, either separately or considered as a whole, were supported by probative evidence which established that the same constituted gross negligence on the part of appellee, and that the trial court erred in ruling to the contrary.

■ The Supreme Court of Texas in Bennett v. Howard, 141 Tex. 101, 170 S.W. 2d 709 (1943), declared that the definition of "gross negligence" given in Missouri Pacific Railway Co. v. Shuford, 72 Tex. 165, 10 S.W. 408 (1888), was the proper definition and that any definition to the contrary was thereby overruled. On page 411, of 10 S.W., of the Shuford case, gross negligence is defined as follows:

"Gross negligence, to be the ground for exemplary damages, should be that entire want of care which would raise the belief that the act or omission complained of was the result of conscious indifference to the right or welfare of the person or persons to be affected by it."

The courts of Texas have stressed the word "conscious" as did the Supreme Court in the Bennett case. Later cases have cited with approval this same definition. Langston v. Tex-O-Kan Flour Mills Co., 211 S. W.2d 1020 (Tex.Civ.App.1948); Wooley v. Southwestern Portland Cement Co., 272 F. 2d 906 (Fifth Cir.1959); Nichols v. Texas Electric Service Co., 206 S.W.2d 860 (Tex. Civ.App.1947, n. r. e.); J. S. Abercrombie Co. v. Scott, 267 S.W.2d 206 (Tex.Civ.App. 1954, n. r e.); Union Transports, Inc. v. Braun, 318 S.W.2d 927 (Tex.Civ.App.1958). Mere indifference is not enough to constitute gross negligence. There must be conscious indifference. Helms v. Universal

Atlas Cement Co., 202 F.2d 421 (5th Cir., 1953) cert. denied; 346 U.S. 858, 74 S.Ct. 74, 98 L.Ed. 372; Rio Grande Valley Telephone Co. v. Hocut, 93 S.W.2d 167 (Tex. Civ.App.1936); Texas Pacific Coal & Oil Co. v. Robertson, 125 Tex. 4, 79 S.W.2d 830 (1935).

■ Circumstances compelled the appellant to rely almost entirely upon testimony of appellee's employees, the names and positions of which are first set out hereinabove. The only other witness for appellant was one Paul D. Fontenot who had departed appellee's employment prior to date of trial, but who was a member of the work crew on the day of the accident. The record is replete with testimony of these witnesses and there is no evidence or testimony to the contrary that all of the lead men in the work crew, including Cutler, were well versed and experienced in the type of work they were performing; that all knew that the power line in question was charged with 138,000 volts of electricity. It was quite customary in the business to do repair work upon these high voltage lines while they were "hot" or charged with electricity. The lead men, including Cutler, had all performed similar work under the same circumstances. The "jumper" and "hot clamps" were the type customarily used in the business and they were not shown to be inadequate or defective prior to the accident. The evidence established that a reasonable inspection of these instruments just prior to the accident failed to disclose that they were loose or improperly secured together to the power line. It was also established that had the "hot clamps" and "jumper" been improperly fastened to the power line that the current of electricity would not have been flowing through said line as it had been doing immediately prior to the time the "jumper" in question came loose. The only evidence as to why the "jumper" did come loose was to the effect that the block and tackle assembly hereinabove mentioned, which was being used to take the slack up on either side of the broken insulator, caused a strain upon the pow-

er line, shaking it and thereby causing the "jumper" to come loose. There was no allegation or proof that this manner of taking up the slack was negligence. The two foremen supervising the job were only a few feet away from Cutler at the time of the accident. They were in good position to assist and supervise Cutler in the work being performed and they were proved to be competent men of long experience in the work in which they were engaged. The tools and equipment with which the work was being performed were all shown to be of the proper and customary type used in the performance of the work in question. It would take several more pages to even state the substance of the wealth of testimony in the record which refutes the allegations of gross negligence contained in appellant's petition and it would serve no useful purpose. The record is simply devoid of any proof to sustain any allegations of gross negligence; therefore, appellant's first 13 points of error are overruled. Bennett v. Howard, supra.

By reason of our foregoing conclusion concerning appellant's first thirteen points of error, we pretermit a discussion of her fourteenth point. Said point complains of the action of the trial court in striking from her first amended original petition the eighth paragraph thereof which alleged the pain and suffering of the deceased as a basis for determination of exemplary damages.

By her last point of error (fifteen) appellant complains of the action of the trial court in overruling her motion that appellee be caused to produce the jumper and clamp giving rise to the arc-flash explosion, together with photographs taken by appellee of the place where the deceased was working at the time of his fall.

The accident occurred September 2, 1954. The motion was not filed until March, 1960. In answer to the "motion to produce" appellee filed its sworn reply to the effect that the jumper and clamp had long been dis-

posed of and had not been in its possession for many years; that the photographs were privileged, having been made by appellee's agents in connection with an investigation of the circumstances surrounding the accident. The court's order denying appellant's motion was upon the same grounds alleged by appellee.

For a thing or document to be subject to discovery it must be in the custody, control or possession of a party to the suit. 3 McDonald, p. 840. In deciding whether or not to order discovery or production, the trial court has a wide discretion and his action will not be reversed unless an abuse of such discretion is shown. 15-A Tex.Jur. (REV.), p. 301. Appellant having failed to raise the issue of abuse of discretion here in regard to any of the things sought to be produced, her last point of error is overruled.

A determination of appellee's counterpoints invoking the doctrine of assumed risk, contributory negligence and unavoidable accident is not deemed necessary.

Judgment affirmed.