City Savings Association, a Corporation, Plaintiff-Appellee, v. C. O. Mensik, et al., Defendants, C. O. Mensik and Robert M. Kramer, Defendants-Appellants.

Gen. No. 53,359.

First District, Second Division.

April 21, 1970.

Paul C. Ross, Schiller and Schiller, and Henry N. Novoselsky, of Chicago, for appellants.

Charles J. O'Laughlin, Patrick J. Phillips, and Seymour I. Burton, of Chicago (Jenner & Block, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

In a proceeding instituted by plaintiff, defendants C. O. Mensik, Robert M. Kramer and M. A. Barto were charged with failure to obey an order of the Circuit Court of Cook County. After a hearing, M. A. Barto was discharged; C. O. Mensik and Robert M. Kramer

were found guilty of willful contempt of court. They were committed to the Cook County Jail "[t]here to remain charged with said contempt until said Respondents shall have produced for inspection of plaintiff . . ." the ledgers and checkbooks of two named corporations. Defendants appeal. The issue is whether the contempt order is supported by evidence.

In 1965 plaintiff sued Mensik, Kramer, Barto and eighteen other defendants for an accounting, and for other relief, concerning certain of its funds. In paragraphs 7, 8 and 15 of the complaint it was alleged that Apple Orchard Builders, Inc., Apple Orchard Shopping Center, Inc., and Fran-Char Building Corporation, all three "[m]anaged, controlled and directed by defendants Charles Hartman, President and M. A. Barto, Secretary, . . ." through spurious loans, had obtained large sums of money belonging to the plaintiff. Defendants appeared and answered. They denied most of the allegations; but asking for strict proof, they neither admitted nor denied that Charles Hartman as President and M. A. Barto as Secretary "[m]anaged, controlled and directed . . ." the three corporations.

November 4, 1965, plaintiff served on Mensik, Kramer and the nineteen other defendants including Charles Hartman and M. A. Barto, a notice to produce "[d]ocuments in their possession or under their control relating to the merits of this case, . . . ." The notice contained nine paragraphs requesting production of bank account statements, canceled checks, check stubs, ledgers, books and records of Apple Orchard Builders, Apple Orchard Shopping Center, Fran-Char Building and seventeen other corporations. No allegation was made stating which of the twenty-one defendants possessed the documents of the twenty corporations. December 17, 1965, based on the notice, the trial court entered an order which, with minor modifications not pertinent here, granted plaintiff's motion to produce.

March 1, 1967, plaintiff filed a petition against defendants Mensik, Kramer and Barto alleging that they "[d]id not and have not produced the books and records of Apple Orchard Shopping Center, Inc., Fran-Char Building Corporation, Apple Orchard Builders, Inc., . . . which books and records were either specifically required to be produced or covered by general categories in the order of December 17, 1965 . . . ." The petition alleged that on February 2, 1967, in a discovery deposition of Barto, she stated that in June 1966 at 3452 West North Avenue, Chicago, Illinois, with the defendants Mensik and Kramer present, defendant Sanford Weinstein, who was the owner of the three corporations, instructed her to prepare their books and records for delivery to him in Toronto, Canada. Plaintiff prayed for a citation to issue commanding the defendants to appear and show cause, if any they had, why they should not be punished for contempt of court for willfully violating the court's order relating to discovery of relevant documents.

Defendants answered plaintiff's petition. They admitted the deposition testimony and alleged that when they were deposed, they testified from memory; that by reference to a telegram in their possession from Weinstein, it appeared that the books and records of the three corporations were picked up by Weinstein on September 10, 1965, a date prior to the court's order. On April 19, 1967, the trial court entered an order directing the three defendants to show cause why they should not be punished for violating the court's order by willfully removing from the court's jurisdiction documents relevant to the action. Hearing was set for April 26, 1967.

When the hearings began, the trial judge ruled that plaintiff had the burden of proof. To carry this burden, plaintiff called Mensik, Kramer and Barto as adverse witnesses. Barto testified that from the dates of incorporation to July 1966, when she resigned at the re-

quest of Sanford Weinstein, she was the secretary of Apple Orchard Builders, Inc., Apple Orchard Shopping Center, Inc. and Fran-Char Building Corporation. She did the secretarial work for the three corporations and had the care of their books and records. She was Weinstein's employee. Sometime in 1966, it could have been in June or in September, she did not remember which, there was a meeting in the offices of Prime Investment Company, 3452 West North Avenue in Chicago. Present were Sanford Weinstein, defendants Mensik and Kramer, Weinstein's attorney Henry McGurren and another man whose name she did not know. At the conclusion of the meeting Weinstein told her to prepare and assemble the books and records of the three corporations. She did this, left them in a drawer; and in November and December 1966 she was away ill in a sanitarium and later in a hospital. She did not know what became of the books and records of the corporations.

Mensik and Kramer then testified. They recalled the June 1966 meeting. Weinstein was concerned about the money he was losing in the building projects and in the corporations. During the meeting, Weinstein insisted that Mensik and plaintiff were obligated to him for losses he was suffering in the undertakings connected with the projects. When the meeting did not produce results satisfactory to Weinstein, he said that he wanted the books of the three corporations. He left the room, went to Barto and told her to prepare and assemble them. Mensik and Kramer denied that they ever delivered to Weinstein the records of the three corporations; they denied knowing what became of them.

After the three testified, plaintiff rested. Defendants made a motion to dismiss the proceedings against them. The court denied the motion. Thereafter, the three defendants testified repeating in their defense what they had said when called as adverse witnesses. At the conclusion of the hearing, the trial judge said that

while he had not decided "[w]ho is going to jail, all or two or one or what. Those books are going to be produced, or somebody or maybe all three will go to jail, . . . ." Mensik then spoke and told the judge that he had no control over the man in Canada (Weinstein). The trial judge told Mensik that all he had to do was to get to the court the books and records of the three corporations. The trial judge then told the defendants that he would give them time to return the books to the court's jurisdiction. The proceedings were continued.

More than a year later, on July 2, 1968, the hearing was resumed. Plaintiff's counsel summarized the earlier hearings at which evidence had revealed "[c]ertain records were sent out of the jurisdiction after the entry of . . ." the order to produce. The trial judge then referred to Barto's testimony concerning the June 1966 meeting at which Sanford Weinstein asked that the books and records of the three corporations be assembled and prepared for shipment to him in Toronto, Canada. Defendants' counsel disagreed that the evidence disclosed what plaintiff's counsel claimed. Barto was again called as a witness and examined by the court. She repeated her testimony concerning the June 1966 meeting, emphasizing that out of the presence of Mensik and Kramer, Weinstein told her to prepare and assemble the corporate records for delivery to him in Canada. Mensik and Kramer then were called as witnesses and they repeated their testimony that neither was an officer, shareholder or director of the three corporations; that neither had possession or control over the corporate records; that neither had personal knowledge of what had happened to the records after they were prepared and assembled by Barto; and that neither gave nor caused the records to be given to Weinstein.

At the conclusion of the hearing, plaintiff's counsel argued that the three defendants were guilty of willful contempt of court because they packaged, prepared, as-

sembled and delivered the books and records of the three corporations so that they could be shipped out of the jurisdiction of the court to Sanford Weinstein in Toronto, Canada. Defendants' counsel argued that the evidence disclosed Mensik and Kramer were neither officers, directors, nor shareholders of the three corporations; that they never had any authority over the books and records of the corporations; therefore, they were not responsible for corporate records over which they had no control. The court ruled that as to the defendant Barto, she was merely an employee obeying orders. She was discharged. As to the defendants Mensik and Kramer, the court said, "[I] would have to be very naive to believe this story of the Respondents, that these men gathered in this office after my order to produce, and that they didn't talk about the books and records that had been ordered by this court to be produced. I don't believe that at all. Consequently the order will be that Mr. Kramer and Mr. Mensik are found guilty of contempt of court. They are committed to the County Jail, there to remain until they produce the books and records. Take them in custody."

The court then entered an order which found that at the direction of Mensik and Kramer the financial records of the three corporations were "[a]ssembled, packaged and delivered to one Sanford Weinstein to be removed to Canada . . . ." The order committed the two defendants to the Cook County Jail "[t]here to remain charged with said contempt until said Respondents shall have produced for inspection of plaintiff the ledgers of Apple Orchard Builders, Inc. and Apple Orchard Shopping Center, Inc. prior to 1964, and the checkbooks for Apple Orchard Builders, Inc. and Apple Orchard Shopping Center, Inc. . . . ." Defendants contend that this order has no support in the evidence.

The proceedings which plaintiff instituted, and the hearings which the trial court held, were to deter-

40

mine whether defendants Mensik, Kramer and Barto were in civil contempt of court for their willful refusal to produce "[d]ocuments in their possession or under their control relating to the merits of this case, . . . ." It is a civil contempt for a party to refuse to produce documents which have been ordered produced by a court. See People v. Parker, 396 Ill 583, 72 NE2d 848. Ordinarily, a contempt adjudication is an appropriate method of testing a pretrial discovery order. People ex rel. General Motors Corp. v. Bua, 37 Ill2d 180, 226 NE2d 6. The burden of proving that defendants were in contempt of court because they directed the assembly, packaging and delivery of the books and records of the three corporations to Sanford Weinstein for removal to Canada was on the plaintiff since it was the party that brought the accusation. Kneisel v. Ursus Motor Co., 323 Ill 452, 154 NE 195, reversing 239 Ill App 644. Defendants had to be shown guilty of the accusation by at least a preponderance of the evidence. People v. Fusco, 397 Ill 468, 74 NE2d 531.

Defendants' argument that the contempt order against them has no support in the evidence rests on their repeated assertion, under oath and by affidavit, that they were not officers, directors or stockholders of the three corporations; nor did they ever have possession and control over the books and records which the plaintiff wanted them to produce. Indeed, plaintiff alleged in its complaint that the three corporations were managed, controlled and directed by Charles Hartman as President and M. A. Barto as Secretary. Plaintiff's proof established that Sanford Weinstein was the sole owner of the corporations. This record contains no evidence which contradicts these facts. Exactly why plaintiff began with a notice to produce documents served on twenty-one defendants and ended with a contempt order against Mensik and Kramer is not clear. The only possible explanation is the repeated assertion of plaintiff's counsel that in

the June 1966 meeting, the two defendants agreed to the court of conduct charged.

This assertion, however, overlooks the uncontroverted fact that Apple Orchard Builders, Apple Orchard Shopping Center and Fran-Char Building were corporations owned and controlled by persons other than Mensik and Kramer. This evidence made inapplicable plaintiff's notice and motion that defendants produce documents in their possession or under their control.

██ It is a rule of universal application that a party who does not have possession and control of documents cannot be ordered to produce them for discovery. State Farm Ins. Co. v. Roberts, 97 Ariz 169, 398 P2d 671 (1965) ; State ex rel. Boswell v. Curtis (Mo App), 334 SW2d 757 (1960) ; Goldstein v. Kaye, 156 NYS2d 238, 2 App Div2d 889 (1956) ; Cutler v. Gulf States Utilities Co. (Tex Civ App), 361 SW2d 221 (1962). Despite absence of any evidence contradicting defendants' insistence that they did not have possession and control of the books and records of the three corporations, the trial judge disbelieved them. However, our laws require that the order which directed defendants' imprisonment be supported by evidence that overcame their testimony and proved that they could produce the documents as requested by plaintiff and as ordered by the court. Compare Moseley v. People, 101 Ill App 564. This order and the evidence on which it rests do not meet these requirements. For this reason, the order is reversed and the cause is remanded with directions that the rule to show cause be discharged.

Order reversed and cause remanded with directions.

McCORMICK, P. J. and BURKE, J., concur.